**In re CHAVARRIA, Roberto, Debtor.**

**Bankruptcy No. 90–01329.**

United States Bankruptcy Court,
D. Idaho.

Aug. 8, 1990.

Richard L. Alban, Nampa, Idaho, for debtor.

Laura E. Burri, Boise, Idaho, for GMAC.

Barry Zimmerman, Meridian, Idaho, Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

The facts in this matter are undisputed. The Debtor granted the creditor GMAC a security interest in his vehicle to secure the unpaid balance of the purchase price. The Debtor filed for relief under Chapter 7, but is current on his payments to GMAC.

As required by Section 521(2) of the Bankruptcy Code, the Debtor filed a statement of intention with respect to his assets subject to liens for consumer debts indicating that as to the vehicle secured to GMAC, he would "keep paying".

GMAC has filed a motion attacking the substance of the Debtor's statement of intention arguing that the option elected by the Debtor is not one of the statutory alternatives authorized by the statute—that is, he must either elect to surrender the vehicle, or to redeem it from the lien or reaffirm the GMAC debt. GMAC therefore seeks an order from the Court directing the Debtor to make the election, and to perform any choice he makes.

The Trustee has filed his "no-asset report" and the parties agree there is no non-exempt equity in the vehicle. In addition, when queried at the hearing, the creditor can point to no specific defaults committed by Debtor under the security agreement, other than the filing of the bankruptcy petition.

There appear to be two issues presented for resolution by the Court. First, is the Debtor limited to the statutory alternatives listed in Section 521(2)(A) as to the GMAC claim in filing his statement of intention? [1] And if so, must the Court upon request by the secured creditor enter an order requiring the Debtor to perform his stated intention?

■ The first issue has already been resolved in this district and after review, there are no good grounds to vary the results of the prior decision. In *In re Stevens*, 85 B.R. 854, 88 I.B.C.R. 1 (Hagan, C.J.), the Court determined that a debtor must either surrender the collateral, or he must redeem the collateral by payment to the creditor of the cash value of the property, or he must negotiate a reaffirmation agreement with the creditor. The debtor does not have the option to retain the collateral, and keep the contract payments current. *Id.* at 2–3. The Court granted the debtor in *Stevens* thirty days within which to either reaffirm or redeem, or to return the security to the creditor.

■ While at first glance *Stevens* appears to have also dealt with the second issue in this case, the ruling is not precisely on point as to the enforcement tools available to the Court to correct a deficiency in the Debtor's statement of intention. In *Stevens*, the matter was before the Court on motion of the Chapter 7 Trustee for entry of an "enforcement" order. The Code squarely places the duty to ensure that the debtor performs according to his stated intention on the trustee. 11 U.S.C. § 704(3). The Trustee in this case is not a party to the motion, and it is the secured creditor seeking entry of the order to either redeem, surrender or reaffirm.[2]

---

1. More specifically, the option the Debtor here desires is the right to continue to pay his GMAC obligation secured by the vehicle without reaffirming on the debt, and thus without any continuing personal liability in the event of his later default, such liability having been discharged. See 11 U.S.C. § 727(b).

2. Since a reaffirmation is a negotiated and fully voluntary agreement by both the debtor and creditor, it is understood that the Court cannot compel the parties to enter into such a contract. The options, in the absence of a negotiated settlement are, therefore, redemption or surrender of the collateral. See 11 U.S.C. § 524(c).

■ There is a clear division of authority as to this second question. Representative of one view is *Lowry Federal Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989) which holds that the bankruptcy court has discretionary authority to permit the debtor to retain collateral securing a consumer debt without either a reaffirmation of the debt or a redemption. As noted by the *Lowry* court:

"... there is nothing within the text of § 521 which suggests a creditor succeeds automatically to any rights as a consequence of the debtors' failure to comply with its mandatory directives. Indeed, only the trustee may take an interest in the property. When the debtor fails to comply with the § 521(2) requirements, the trustee is vested by 11 U.S.C. § 704(3) with ensuring the debtor's compliance with § 521(2). That responsibility, however, is not coupled with any power of enforcement. In short, there is a gap between the trustee's duty to obtain compliance and the trustee's power to enforce that duty because Congress provided neither a penalty for a debtor's failure to comply with § 521(2) nor a specific remedy for a creditor as a consequence of such a failure."

882 F.2d at 1546 (footnotes omitted). The creditor in *Lowry* did not present any evidence of actual prejudice. The Court was unwilling to accept "... speculative arguments over dreadful possibilities that may result if the debtors fail to exercise proper care of the truck or ultimately fail to pay ...", 882 F.2d at 1546, and the Court would not rule on the enforceability of the "ipso facto" bankruptcy clause in the security agreement since the issue was not properly before it. The *Lowry* Court concluded that while the provisions of Section 521 were mandatory, they did not make redemption or reaffirmation the exclusive means by which the Court can allow a debtor to retain secured property. *Lowry* affirmed the bankruptcy court's ruling that allowed the debtor to retain the property conditioned upon the debtor's performance of the conditions of the security agreement.

A contrasting perspective is found in *In re Edwards*, 901 F.2d 1383 (7th Cir.1990). There, the Court interprets the effect of the statutes as follows:

"The 1984 Consumer Finance Amendments to the Bankruptcy Code [which included § 521] were intended, inter alia, to protect creditors from the risks of quickly depreciating assets and to keep credit costs from escalating because of the too ready availability of discharge. This legislative purpose speaks strongly against permitting debtors to improve their position dramatically against secured creditors by relieving them of personal liability. When a debtor is relieved of personal liability on loans secured by collateral, the debtor has little or no incentive to insure or maintain the property in which a creditor retains a security interest. The value of the collateral may fall below the level of the loan, leaving the creditor undersecured and driving up future costs of credit."

901 F.2d at 1386. Responding directly to the Tenth Circuit's decision, the Court suggests that "... *Lowry* is not consonant with the plain language of the Bankruptcy Code ... [and] renders the statutory scheme set up by § 521 and § 524 (the specific reaffirmation provisions) nugatory." 901 F.2d at 1386–87.

After a careful review of the authorities discussed, and others cited by the parties, this Court will adopt the position explained in *Edwards* by the Seventh Circuit for several reasons.

The Bankruptcy Code, by its very nature, is an attempt to balance the interests of debtors and their creditors. The Court is of the opinion that in passing Section 521, Congress was likely cognizant of the potential effects of limiting a debtor's options to three choices with respect to secured consumer debts: redemption, reaffirmation or surrender. The Court will not judicially create a fourth alternative by allowing the

---

Likewise, a redemption requires a payment to the secured creditor of the cash value of its interest in the collateral, 11 U.S.C. § 722, not through any sort of installment payments. *In re Polk,* 76 B.R. 148 (9th Cir. B.A.P. 1987); *In re Carroll,* 11 B.R. 725 (9th Cir. B.A.P. 1981).

Debtor to perform certain portions of the credit agreement (i.e. making monthly payments) while avoiding those provisions laden with risk (i.e. personal liability for a deficiency). By enacting Section 524(c), Congress likewise made it clear that reaffirmations would be available only in limited circumstances, whereas the result in *Lowry* would sanction a kind of unilateral reaffirmation arrangement without requiring creditor consent as a condition.

By holding that debtors in Chapter 7 cases must make the statutory election, and that the Court will enforce it, does not leave those debtors without protection. First of all, Section 521(2) itself ensures that the debtor will have at least 75 days to execute one of the alternatives it describes. This allows ample time after the filing of a bankruptcy to attempt a negotiated reaffirmation, or to make other suitable arrangements to either replace or refinance the collateral.[3]

In addition, both subsections (A) and (B) provide for extensions of the time limits for compliance with the election procedure for "cause" upon a timely request. 11 U.S.C. § 521(2)(A) and (B). These provisions would accommodate the cases in which the Court's discretion is needed to temper the operation of the statute, and would allow the Court to craft appropriate creditor protections as part of that process. This approach more closely serves the purpose of the statute by requiring the debtor to act promptly and mitigates against the insincere debtor.

Finally, it seems to the Court that the result in *Lowry* resembles a sort of single creditor Chapter 13 plan in that the secured creditor is deprived of the value of the collateral until the debtor decides the arrangement is no longer desirable or economical. If the debtor truly has the ability to pay the secured claim over time, this can be accomplished in a "real" Chapter 13 case, but only in a manner that properly recognizes the rights of the creditor.

The Court is convinced that it has the implied, if not express, authority to enter orders respecting the debtor's duty to state and perform a statutory intention as required by the Bankruptcy Code. To find that because there is no express enforcement language in Section 521 the Court is without power to enter an order in favor of the secured creditor would effectively frustrate the function of the statute. While the Code dictates that the trustee may enforce the statement of intention, 11 U.S.C. § 704(3), a trustee is not the only interested party in such matters. Should the secured creditor be required to seek a court order compelling the trustee to take action against a debtor to enforce the statement of intention? This would be an oddly inefficient system indeed.

The creditor's motion is proper and it will be granted by a separate order.

---

**3.** There is nothing that would prevent a secured creditor from seeking relief from the automatic stay prior to the expiration of the Section 521(2) time periods assuming grounds for relief exists. 11 U.S.C. § 362(d)(1) and (2). However, if such a motion is granted, the creditor would have to seek enforcement of its possessory rights in state court, with the attendant delay and expense. In addition, the Court is mindful of the policy allowing a debtor time to exercise his options in connection with consideration of any such motion.