In re Christopher **PARLATO**, Debtor.

Bankruptcy No. 95–20475.

United States Bankruptcy Court,
D. Connecticut.

Aug. 10, 1995.

---

Thomas P. Malnati, Brown & Welsh, Matthew J. McGowan, Salter, McGowan & Swartz, C/O Brown & Welsh, Meriden, CT, for First Nat. Bank of Boston, movant-creditor.

Robert C. Lubus, Jr., Grady & Riley, Waterbury, CT, for debtor.

*RULING ON MOTION TO COMPEL DEBTOR TO REAFFIRM DEBT, REDEEM OR SURRENDER SECURED COLLATERAL*

ROBERT L. KRECHEVSKY, Chief Judge.

## I.

### *ISSUE*

The issue presented by this proceeding is whether Bankruptcy Code § 521(2)[1] permits a Chapter 7 debtor, who is current in his secured automobile loan installments and other loan terms, to retain the exempted automobile, after discharge, without either redeeming the automobile or reaffirming the debt. Four courts of appeals have addressed the issue to date with evenly-divided results. There is no controlling authority in this circuit. The parties have submitted the matter upon briefs only, there being no dispute as to the following facts.

## II.

### *FACTS*

Christopher Parlato (the "Debtor") on or about February 13, 1994, executed a retail installment contract (the "Contract") which granted a security interest in a new 1994 Pontiac automobile to Valenti Motors, Inc. (Valenti), the seller, in consideration of a five-year installment loan of $14,145.34 with monthly payments of $287.70. The cost of the automobile was $15,800.30. Valenti immediately assigned the Contract to The First National Bank of Boston (the "Bank").

On February 10, 1995, the Debtor filed a Chapter 7 petition, and in his § 521(2) Statement of Intention, he indicated that his intention as to the automobile was to "Retain & Pay", declining either to reaffirm or to redeem.

The Bank, on or about May 11, 1995, filed a pleading entitled "Motion To Compel Debtor To Reaffirm Debt, Redeem Or Surrender Secured Collateral, And For Alternative And Additional Relief" to which the Debtor has objected. At the hearing on the motion and objection, the parties stipulated that the Debtor is not in default of any contract terms and is current with all installment payments; and that the present unpaid balance of the loan and the present value of the automobile are the same—approximately $12,300. The Bank is not agreeable to the Debtor retaining the automobile unless he reaffirms his debt or redeems the automobile.

## III.

### *DISCUSSION*

### *A.*

Section 521 contains a list of debtor's duties in a bankruptcy case. As originally

---

1. 11 U.S.C. § 521(2). Debtor's duties. The debtor shall— ...
   (2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—
   (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
   (B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
   (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title; ....
   11 U.S.C. § 521(2).
   In a related provision, the trustee is required to: "(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title." 11 U.S.C. § 704(3).

enacted, § 521 contained four duties: (1) to file required informational schedules with the court, (2) to cooperate with the trustee serving in the case, (3) to surrender to the trustee all estate property and records, and (4) to appear at a discharge hearing. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) added § 521(2). The statutory interpretation problem is whether in § 521(2) "Congress intended the alternatives listed in the statute (i.e., retention of the collateral via exemption, reaffirmation or redemption; or surrender) to be the exclusive choices available to a debtor." Jim D. Pappas, *Section 521(2) of the Bankruptcy Code: The Creditor's Predicament in Getting Paid as Agreed,* 99 Com.L.J. 45, 48 (1994).

In *Lowry Federal Credit Union v. West,* 882 F.2d 1543, 1545 (10th Cir.1989), the first ruling by a court of appeals, the debtors who were current on their loan payments and were maintaining adequate insurance on the collateral, a pickup truck, brought a complaint in the bankruptcy court for declaratory judgment and injunctive relief. The debtors asserted that the creditor secured by the pickup truck was threatening to repossess the vehicle. *Id.* The debtors, in their § 521(2) statement, had declared only that they intended to retain their truck. *Id.* The bankruptcy court enjoined the creditor from repossessing the truck so long as the debtors remained current on their payments, provided adequate insurance and were not in default of any of their contractual obligations. *Id.* The district court affirmed. The court of appeals phrased the principal question before it as "whether the debtors' failure to comply with the mandatory requirements of 11 U.S.C. § 521(2) gives a secured creditor an automatic and conclusive right to repossess collateral." *Id.* at 1544. The court, concluding that Congress did not provide any power of enforcement for a debtor's failure to comply with § 521(2) requirements, held that the debtor's failure to comply with § 521(2) does not give a secured creditor an automatic right to repossess the collateral. *Id.* at 1546. The court affirmed the lower courts' finding "that the mere filing of the petition has not put [the secured creditor] in any more jeop-

ardy than that which existed prior to the filing of the petition." *Id.*

As a secondary question, the court addressed the issue of whether debtors could retain collateral upon remaining current on their obligations even though the debtors have neither redeemed the collateral nor reaffirmed the debt. *Id.* at 1544. Although the court found the language in § 521(2) to be mandatory and unambiguous, the court concluded that nothing in the statute designated redemption and reaffirmation as exclusive. *Id.* at 1545–56.

*In re Edwards,* 901 F.2d 1383, 1386 (7th Cir.1990), like *Lowry,* concluded that § 521(2) was mandatory. However, *Edwards* disagreed with *Lowry* and concluded that § 521(2) was to be construed to limit a debtor's options to surrendering the collateral, redeeming the collateral, or reaffirming the debt. *Id.* at 1387. *Edwards* concluded that *Lowry* was "not consonant with the plain language of the Bankruptcy Code . . .[,] renders the statutory scheme set up by § 521 and § 524 (the specific reaffirmation provision) nugatory . . . [a]nd . . . does not comport with the spirit of the 1984 Amendments to the Bankruptcy Code." *Id.* at 1386–87. That "spirit", *Edwards* opined, was to protect creditors from the risk of "the too-ready availability of discharge." *Id.* at 1386.

*Home Owners Funding Corp. v. Belanger (In re Belanger),* 962 F.2d 345, 347 (4th Cir.1992) which next addressed § 521(2), concluded that the options of surrender, redemption or reaffirmation under § 521(2) were not mandatory and were not exclusive. In so holding, the court construed the phrase "if applicable" in § 521(2)(A) to mean that the debtor must elect reaffirmation or redemption only if they are applicable, but need not elect if they are not applicable (i.e., if the nondefaulting debtor desires to retain the collateral by keeping payments current). *Id.* at 347–48. The court accepted the analysis in 3 COLLIER ON BANKRUPTCY, ¶ 521.09A at 521–49 (Lawrence P. King ed., 15th ed. 1995) which states:

> Nothing in section 521(2) requires the debtor to choose redemption, reaffirmation or surrender of the property to the exclusion of all other alternatives although no

other alternatives are provided for in the Code. That section merely requires a statement of whether the debtor intends to choose any of those options, if applicable. *Id.*

The court also approved the statement in COLLIER that § 521(2) "affect[s] only procedure, and not substantive rights of the debtor." [2] *Belanger,* 962 F.2d at 347. *Belanger* adopted the bankruptcy court and district court rulings that a debtor has complied with § 521(2)(A) by giving notice of retention and intent to continue to meet its contractual obligations because § 521(2)(A) is a procedural/notice provision requiring notice in order to inform the lien creditor promptly of the debtor's intention, and does not enlarge or improve the substantive rights of a creditor. *Id.* Such an interpretation of § 521(2)(A), according to *Belanger,* is consistent with § 521(2)(C) which provides that subsection (A) does not alter the debtor's rights with regard to the collateral. *Id.* Furthermore, *Belanger* concluded that *Edwards* was in error in "failing to give effect to § 521(2)(C) and legislative history that disclosed Congress rejected a proposal to lift the automatic stay if the debtor did not timely redeem or reaffirm." [3]

The most recent ruling comes from the Eleventh Circuit, *Taylor v. AGE Federal Credit Union (In re Taylor),* 3 F.3d 1512 (11th Cir.1993). *Taylor* rejects the argument of *Belanger* that the "if applicable" language of § 521(2) gives a debtor some

form of option, as being inconsistent with the plain meaning of the statute. *Id.* at 1516. *Taylor,* after reviewing the three circuit rulings concluded that "[a]llowing a debtor to retain property without reaffirming or redeeming gives the debtor not a 'fresh start' but a 'head start' since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral." *Id.* at 1516. *Taylor* held that nothing in the plain language of § 521(2) provided a debtor with an option to retain property and to continue to make payments and that it would apply the law as enacted by Congress (e.g., that a debtor who intends to retain secured property must specify an intention to redeem or reaffirm). *Id.*

### B.

The plain language methodology requires a court to resolve cases based upon the plain language of a statute unless an ambiguity exists to justify resort to legislative history and other principles. *Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588, 595 (1990). Courts should not infer a legislative intent to override prior bankruptcy case law absent an express revision or clear legislative history to that effect. *Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494, 501,

---

**2.** *See* 3 COLLIER ON BANKRUPTCY, ¶ 521.09A at 521–51—521–52 (Lawrence P. King ed., 15th ed. 1995). (Section 521(2)(C) "was inserted to make clear that the primary purpose of section 521(2) is one of notice, to remedy creditors' complaints to Congress that they could not reach debtors' attorneys and were not permitted to contact *pro se* debtors at all. By giving the trustee the duty of ensuring that actions are taken in a timely manner, Congress interposed a more neutral party, vested with the trappings of the court, to contact the debtor.").

**3.** *In re Belanger,* 962 F.2d 345, 347 (4th Cir. 1992). *Belanger* approved the district court's consideration of the practicalities of the options mentioned in § 521(2)(A) which "pointed out that a person who has filed bankruptcy is unlikely to be able to redeem the collateral in a lump sum as required by § 722. If the debtor seeks to retain the collateral, the only alternative to re-

demption, according to the creditor's argument, is reaffirmation. But reaffirmation requires the consent of the creditor in order to comply with § 524(C) [sic]. This enables the creditor to compel the debtor either to meet the creditor's terms of reaffirmation or to surrender the property." *Id.* at 348. The court further noted that "[i]f the debtor defaults by, for example, omitting payment, allowing insurance to lapse, or failing to maintain the collateral properly, the creditor can repossess the collateral and sell it." *Id.* at 349.

*See* Joann Henderson, *The Gaglia–Lowry Brief: A Quantum Leap From Strip Down To Chapter 7 Cram Down,* 8 BANKR.DEV.J. 131, 167 (1991) ("The *Edwards* court summarily assumed that debtors have no incentive to care for collateral upon discharge, concluding that reinstatement is prejudicial. However, as long as payments are made and the property is insured, where is the risk to justify forfeiture of all contract rights? *Edwards* imposes a penalty for filing bankruptcy.").

106 S.Ct. 755, 759, 88 L.Ed.2d 859, 866 (1986).

In the four rulings discussed, the courts, in varying degrees, referred to the plain language doctrine in reaching their completely different results. They also resorted to legislative history to support their conclusions. The difference in rulings, I believe, is explainable when each court's attitude toward the legislative history and purpose of § 521(2) is explored. *Edwards* and *Taylor,* utilizing deprecative phrases such as the "too-ready availability of discharge" and "head start" versus "fresh start", view § 521(2) as an apparent Congressional response to concerns of secured creditors in consumer bankruptcy cases.[4] *Lowry* and *Belanger,* on the other hand, examine the opaque language of § 521(2) with an eye on Congress' probable intent not to upset the existing sensitive balance of debtor and creditor considerations with regard to reaffirmation policies underlying § 524(c). *See* 3 COLLIER ON BANKRUPTCY, ¶ 524.04 at 524–35 (Lawrence P. King ed., 15th ed. 1995) (The § 524(c) provisions "grew out of a long history of coercive and deceptive actions by creditors prior to enactment of the Code to secure reaffirmation of debts. They have been applied strictly by the courts to carry out their remedial purposes...").

 I believe that *Lowry* and *Belanger* exhibit a more profound understanding for what transpires in a bankruptcy court between secured creditors and consumer debtors, and have arrived at the more reasonable interpretation of Congress' purpose in enacting § 521(2). Therefore, I conclude, for the reasons elaborated upon in *Lowry* and *Belanger,* that Congress did not intend to increase the secured creditor's substantive rights and make redemption and reaffirmation the debtor's sole rights where the debtor is not in default of his contractual obligations with the secured creditor. The requirements of § 521(2)(A) are procedural in nature. This interpretation promotes the "fresh start" policy[5] by balancing the rights of a creditor to proceed against the debtor if there is a default, with the preservation of the substantive rights of the debtor under § 521(2)(C).

IV.

CONCLUSION

The Bank's motion that the court compel the Debtor to reaffirm his debt, redeem or surrender the automobile is denied as contrary to law. It is

SO ORDERED.

---

**4.** *See* Jim D. Pappas, *Section 521(2) of the Bankruptcy Code: The Creditor's Predicament in Getting Paid as Agreed,* 99 COM.L.J. 45 (1994). Congress enacted § 521(2) because "a vocal coalition of consumer creditors advocated numerous changes and additions to the Code concerning consumer credit in particular. After vigorous debate, some of the suggested changes became law as a package known as the 'Consumer Credit Amendments'." *Id.* at 47.

**5.** A purpose of bankruptcy legislation is to afford the "honest but unfortunate debtor" a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755, 764–65 (1991) (*quoting Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1934)).