208 B.R. 61 (1997)
In re Lorraine Lillian MAYTON, Debtor.
Lorraine Lillian MAYTON, Appellant,
v.
SEARS, ROEBUCK & CO.; Heide Kurtz, Chapter 7 Trustee; United States Trustee, Appellees.
BAP No. CC-95-2267-MeKV, Bankruptcy No. SV 95-15067-GM.
United States Bankruptcy Appellate Panel of the Ninth Circuit.
Submitted Without Argument July 25, 1996.
Decided March 31, 1997.
*62 Lorraine Lillian Mayton, Lancaster, CA, in pro per.
David S. Brower, Leibowitz & Constantino, Santa Clara, CA, for Sears, Roebuck & Co.
Before: MEYERS, KING[1] and VOLINN, Bankruptcy Judges.

OPINION
VOLINN, Bankruptcy Judge.
The debtor appeals from an order entered on motion of a consumer secured creditor, pursuant to 11 U.S.C. Sec. 521(2), requiring her to amend her statement of intention, Official Bankruptcy Form 8, as to the collateral claimed by the secured creditor. We reverse.

FACTUAL BACKGROUND
The debtor filed her Chapter 7 petition pro se[2] on July 7, 1995. Her schedules show approximately $30,000.00 in unsecured debts, consisting of ten credit card creditors, with charges incurred from 1986 through 1993, and two department store creditors, with total charges of approximately $2,400, incurred in 1986 and 1994. The schedules show that the debtor lived in a retirement community with a month-to-month tenancy. She had a monthly income of approximately $1,000 from social security and two small pensions and monthly expenditures of approximately $1,300. Her personal property, virtually all of which was claimed as exempt, consisted primarily of household furniture and personal belongings, including about $500 in cash. Her schedules listed no secured creditors.
As required by § 521(2),[3] the debtor filed Form 8, designated "Chapter 7 Individual Debtor's Statement of Intention," with her schedules. Form 8, Paragraph 1 states: "I, the debtor, have filed a schedule of assets and liabilities which includes consumer debts secured by property of the estate." Official Bankruptcy Forms, Form 8 (reprinted in Norton Bankr.Law & Pract.2d: Bankr.Rules at 781 (1996)). Paragraph 2 requires the debtor to state whether she intends to retain or surrender property secured by the consumer debt. For property to be retained, the form provides three options:
(1) Debt will be reaffirmed pursuant to § 524(c);
(2) Property is claimed as exempt and will be redeemed pursuant to § 722, and
(3) Lien will be avoided pursuant to § 522(f) and property will be claimed as exempt.
Id. On the form, the debtor responded "N/A" to both the "Property to Be Surrendered" and "Property to Be Retained" statements.
At the § 341 meeting of creditors held on August 11, 1995, the debtor appeared for examination by the U.S. Trustee and interested creditors. The following exchange took place between the debtor and a representative of Sears:
SEARS: Ms. Mayton, do you still possess the microwave and washing machine and sewing machine purchased from Sears?
Debtor: Yes.

*63 SEARS: Nothing further for the record. Thank you.
On October 2, 1995, Sears filed a motion to compel the debtor to file an amended statement of intention pursuant to Fed. R.Bankr.P. 1009(a). Sears alleged in a declaration attached to the motion, that the debtor had purchased a sewing machine, a microwave oven, a television and a "LXICU box/programmer" with her Sears credit card and that therefore the items were subject to security agreements.
The sales receipts attached contained language giving a security interest in the purchased goods.
The debtor's discharge was entered on November 2, 1995. A hearing on the motion to amend was held on November 9, 1995. On November 9, 1995, the court ordered the debtor "to file an Amended Statement of Intention, including her intention as to secured Creditor, Sears, Roebuck and Co., within thirty (30) days of entry of this order." The order was entered on November 15, 1995. The debtor filed a timely notice of appeal on November 17, 1995.

ISSUE
Whether the court could require that the debtor file an amended statement of intention, specifically responding to Form 8 in terms of surrender or retention of collateral and in the latter event whether the debtor would redeem or reaffirm?

STANDARD OF REVIEW
Essentially, there are no disputed facts. The fundamental issue is one of statutory interpretation which involves the de novo standard or independent appellate review. In re Pace, 67 F.3d 187, 191 (9th Cir.1995).

DISCUSSION

I.
As indicated, the order on appeal requires the debtor to comply with § 521(2).[4]
At the outset, there is a question as to whether the order on appeal is a final ruling on a discrete issue effectively fixing the relationship of the parties. The BAP has jurisdiction to review final orders of the bankruptcy courts. 28 U.S.C. § 158(a). The Ninth Circuit has adopted a "pragmatic approach to deciding whether a bankruptcy court's order is final, recognizing that certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right." Dunkley v. Rega Properties, Ltd. (In re Rega Properties, Ltd.), 894 F.2d 1136, 1138 (9th Cir.1990) (quotations omitted). Orders which resolve discrete issues and seriously affect substantial rights are immediately appealable. Allen v. Old Nat'l Bank of Washington (In re Allen), 896 F.2d 416, 418 (9th Cir.1990). The scope of appellate jurisdiction is ultimately defined by balancing "the costs and inconvenience of piecemeal review on the one hand and the danger of denying justice on the other." Gillespie v. United States Steel Corp., 379 U.S. 148, 152-53, 85 S.Ct. 308, 311, *64 13 L.Ed.2d 199, (1964)(quoting Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950)). It is at least arguable that the order, because it is directed to § 521(2)(A), which requires a debtor to furnish information as to his or her intention, is simply prologue to the requirement of § 521(2)(B) which requires that the statement of intention, as filed, be fulfilled within forty-five days. As indicated, official form 8, the statement of intention, directs the debtor to one of the four alternatives discussed above. The form further states "I understand that § 521(2)(B) of the Bankruptcy Code requires that I perform the above stated intentions within 45 days of the filing of the statement with the court or within such additional time as the Court, for cause, within such 45-day period fixes."
The statute plainly provides that the filing of a statement does not represent a discrete or separable act. Rather, the statement begins a self-executing continuum. Once the debtor files a statement, § 521(2)(B) commits the debtor as follows:
within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph . . .
Thus, the court order requiring debtor to file a statement commits the debtor to surrendering the property or to following any one of the three specific alternatives indicated. To put it otherwise, the order is self-executing and no further proceedings before the court are contemplated other than those which might be required for enforcement. It therefore appears that the order before us is final and appealable.

II.
Section 521(2), which was added to the Bankruptcy Code in 1984, was sponsored by consumer creditor organizations, resisted by debtor-oriented groups and debated in the Congress. The legislative pulling and hauling is described in considerable detail in the case of In re Weir, 173 B.R. 682 (Bankr. E.D.Cal.1994).
Because of the legislative compromises and logjam atmosphere attending the 1984 bankruptcy legislation, certain controversial sections of the Code, such as § 521(2), resulted in ambiguous language and inconsistent or conflicting provisions. The cases dealing with § 521(2) arise, for the most part, in two contexts: cases in which the debtor is considered not to have filed a statement of intention and cases in which the debtor stated an intention to pursue a course other than one specified in § 521(2). In the latter category, the debtor has generally stated an intention to retain the property and simply make payments as provided for by the security agreement. The instant matter falls in the former category.
Of the five circuit courts of appeal thus far interpreting the statute before us, three have held that the debtor is required to address only the alternatives set forth in § 521(2)(A)(B).[5] For instance, in In re Johnson, 89 F.3d 249 (5th Cir.1996), the most recent circuit decision at the present time, the court, in a brief per curiam ruling adopting the bankruptcy court's reasoning, determined that, pursuant to § 521, the debtor was required to state her intention to surrender or retain the secured property and, in the event of retention, to make one of the three choices indicated by the statute. Two circuit courts of appeal have held that the debtor is not constrained to comply with the specific statutory alternatives.[6] There is marked disagreement among bankruptcy courts and district courts in other circuits.[7]
*65 Essentially, the cases that limit the debtor's choices focus on what appear to be the statute's explicit and mandatory requirements. Some of those courts also justify the result on pragmatic or equitable terms pointing out that if the debtor does not follow the mandate of § 521(2), the result will be, in the event of discharge, a non-recourse secured creditor who must stand by while the debtor makes payments on depreciating property only so long as it is useful to the debtor. Thus, the Eleventh Circuit recently stated:
Allowing retention of the property without reaffirmation or redemption would be tantamount to forcing the creditor into a de facto reaffirmation agreement with no recourse against the debtor. . . . Furthermore, the debtors would have no incentive to keep the property in good condition or to continue making payments if the value of the collateral declined below the amount of the debt or was destroyed. Such an arrangement is contrary to the language of the Code.
Taylor, 3 F.3d at 1516 quoting Horne, 132 B.R. at 663-64 (alteration in original).
Other cases have held that the specific designation of alternatives is not exclusive or mandatory. For instance, in In re Bracamortes, the court, considering a motion by Sears similar to the one in the instant case, declined to compel the debtors to amend their statements of intention holding that "there is nothing in the statute which suggests that the time periods are anything more than procedural guidelines." Bracamortes, 166 B.R. at 162. The court held that neither the duty to file nor the time limitations affected the debtor's substantive rights with respect to the property and that when the debtor failed to comply with § 521(2), "the expiration of those time periods can serve as a signal to the creditor that it may be time to take action to enforce its lien rights against the collateral." Id.
In In re Ogando, 203 B.R. 14 (Bankr. D.Mass.1996), Sears held a purchase money security agreement covering a variety of household goods ranging from televisions to mattresses. As in the instant case, Sears moved for an order requiring each of the debtors to file a statement of intent with respect to the Sears debt and the underlying collateral pursuant to § 521(2). Sears intended, as it does here, that the debtor would be limited to choosing from the options specified in § 521(2). The court pointed out that because Sears held a purchase money security interest, the debtor could not exempt the property and avoid the security interest pursuant to the § 522(f) avoidance powers. Thus, if the debtor desired to retain the goods, the choice would be redemption or reaffirmation. Redemption would require payment of the allowed amount of the secured claim under § 722, which could be substantial and, therefore, reaffirmation would be the only practical retention option. The court stated "[o]btaining reaffirmation is obviously Sears' goal in filing the motions." Ogando, 203 B.R. at 15-16.
The court discussed the meaning of the words "if applicable" in § 521(2)(A) and concluded the phrase was ambiguous. The court therefore stated that it must "look elsewhere to glean the meaning of subparagraph (A)" and concluded:
We do not have far to look. Subparagraph (C) states: "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title."
Id. (quoting § 521(2)(C)). According to the court, restriction of the debtor's retention options to redemption or reaffirmation (or exemption) indisputably "alters" the debtor's "rights."
A debtor otherwise may retain the collateral and continue to make the contract payments or go into default and risk foreclosure. *66 Amazingly, courts restricting the debtor to redemption or reaffirmation refer not at all to subparagraph (C). Yet its meaning is plain, especially in the light of its location in a statute whose other paragraphs all relate to procedure and not substance.
Id. at 16.
The Ogando court criticized the reasoning of § 521(2) cases which ignore or contravene the Congressional concern in preserving the voluntary nature of reaffirmation under § 524(c)(3)(A) by, in effect, requiring the debtor to select a course which will result in either payment of the debt or surrender of the collateral. While critical of the cases requiring the debtor to file a statement with one of three choices, the court concluded, after presumably advising the secured creditor that enforcement of the order would be questionable, that "section 521(2) clearly requires a debtor to file a statement of his intention either to retain or surrender the collateral. An order requiring the filing of such a statement has therefore issued." Id. at 17. This result was consistent with the ruling of the district court in Sears Roebuck & Co. v. Lamirande, 199 B.R. 221 (D.Mass. 1996).

III.
Section 521(2)(C) preserves the debtor's property rights derived from the substantive provisions of the Code and specifically provides that subparagraphs (A) and (B) are subservient to it. It is also clear that § 521 does not diminish the debtor's rights under the Code generally. In the case of reaffirmation, the most cursory reading of § 524(c) et seq. emphasizes its voluntary aspect.[8] Likewise, redemption by virtue of § 522(f) or § 722 is voluntary since each section states that the debtor "may" redeem. Considering that the subject matter of consumer finance transactions not infrequently is the stuff of which garage sales are made, insofar as the property remains viable, while it may be of use to the debtor, its resale value, as stated by counsel for Sears, is "de minimis." Under these circumstances, reaffirmation or redemption are alternatives which in effect create an acceleration of the debt.
As previously indicated, it certainly would be better for the secured creditor to have available the possibility of a judgment in the event of default, as would be the case were there no bankruptcy. However, this does not outweigh the right of the debtor to file bankruptcy, and discharge the debt. In any event, as indicated, redemption is voluntary and the debtor, pursuant to § 521(2)(C), is free to decline to choose this option if it does not serve the debtor's interest.
If the debtor cannot be constrained to select reaffirmation or redemption by virtue of § 521(2)(C), the remaining alternative is surrender of the property. Despite the fact that the secured creditor, prior to discharge, is enjoined by § 362(a)(4), (5) and (6) from taking any action to enforce prebankruptcy liens against property of the debtor, the secured creditor may seek relief from stay. It is not likely that Congress intended to abrogate or dispense with the requirement that the secured creditor move for termination of the stay in order to permit the creditor to seek the remedy of foreclosure in state court. To put it otherwise, considering the central role the automatic stay plays in bankruptcy proceedings, it would not be appropriate to infer that Congress by its use of the term "surrender" intended to nullify the provisions of § 362(a) together with the contract rights under state law of the consumer debtor and creditor relative to retention or surrender of collateral in which the creditor has a purchase money secured interest.
The automatic stay dissolves on the discharge date. After discharge, as is the case here, while the secured creditor is free to foreclose on collateral, § 524(a)(2) otherwise enjoins the creditor from attempting to collect or enforce the debt. Thus, the creditor's only recourse is to return to state court and foreclose on the security. As previously discussed, and as indicated by counsel in this case, all too often, the pursuit of that remedy would not be worth the effort. But inadequacy of collateral is a problem which bankruptcy *67 cannot cure. In any event, as previously indicated, to equate "surrender" as an equivalent to "foreclosure" would amount to abrogation of the automatic stay of § 362 for the benefit of secured consumer creditors. If Congress desired to provide such a distinctive right to a particular class such as consumer secured creditors, it would have said so, particularly in light of § 521(2)(C).
Appellee, in its brief to this court, states:
When a debtor fails to comply with 11 U.S.C. 521(2), what choice does a creditor have? The creditor could move for Relief From Stay and then sue in State Court for repossession, a costly alternative for both debtor and creditor when the security is consumer goods. A creditor may wait until the discharge and then pursue its in rem right, again, a very costly solution. Additionally, in the interim, the debtor may have divested himself of the collateral, leaving the creditor's remedy unclear at best.
If the above were true, why would Congress have adopted 11 U.S.C. § 521(2)? A creditor would still have these rights without 11 U.S.C. § 521, as a non-consumer creditor does. When Congress adopted 11 U.S.C. § 521(2), it did not do so in a vacuum. Congress must have realized that Relief From Stay and in rem rights do not effectively protect a secured consumer creditor, whose security is almost always of deminimus [sic] value when judged against the costs of Relief From Stay and in rem rights. Protection of this class of creditor is certainly the reason Congress required debtors to file a correct Statement of Intention.
While the foregoing does not explicitly state that Sears seeks reaffirmation, it appears that what it wants is a direction to the debtor to pay the debt since recourse to collateral of "de minimis" nature, considering the added factor of foreclosure cost, would afford little, if any, recovery. This appears to skirt the mandate of § 524(a)(2) enjoining post-bankruptcy efforts to collect a discharged debt.
In view of the language of § 521(2)(C), there is no reason to believe that Congress intended that the secured creditor would be in a better position because of the happenstance of bankruptcy than would be the case under state law. As indicated in Ogando, Congress clearly intended that the debtor notify the creditor as to his or her intentions relative to the property. It is only fair that the debtor advise the secured creditor as to the intended disposition of the collateral and compliance with the statute's directive in this respect should be observed. Here, the debtor filed a statement which contained the notation "N/A." This notation, while general, gave appellee no reason to believe that the debtor would follow any of the courses indicated in the form and, coupled with the record in this case makes it plain that the debtor chose not to follow the options indicated in form 8. Rather, the debtor chose to retain the property in a condition of default and declined to reaffirm or redeem. At this point, appellee basically does not seek recourse to its collateral. Instead, it would seek monetary recovery from the debtor.

CONCLUSION
Section 521(2) directs that a debtor with consumer secured debt (A) file notice to as to the debtor's intention to surrender or retain the collateral, and, in the latter event, give notice of exemption, redemption or reaffirmation; and (B) perform such intentions within 45 days. However, § 521(2)(C) makes it plain that "nothing in subparagraphs (A) and (B) shall alter the debtors . . . rights with regard to such property under this title." It is clear that § 521(2) was not intended to undercut the debtor's rights to a stay under § 362 or the procedure for obtaining relief from the stay; nor is there any evidence of Congressional intent to impair or affect the integrity of the discharge or the post discharge enjoinder of debt-collection pursuant to § 524(a)(2). There is no indication that there was an intention to modify or dispense with the voluntary procedures relating to redemption pursuant to § 522(f) and § 722 or the reaffirmation procedure of § 524(c)(3)(A). In the light of the preservation of or continued existence of the debtor's rights in these respects, the only logical basis for reconciling the conflicting elements of *68 § 521(2) is to hold that it is essentially a notice statute. See Bracamortes, 166 B.R. at 162, 4 Collier on Bankruptcy, ¶ 521.09 at 521-33 (15th ed. rev.1996).
The appellee, as previously stated, knows that the debtor thus far has chosen to retain the collateral without committing herself further. Surrender of collateral can be voluntary or involuntary. Appellee after issuance of the discharge was no longer precluded from pursuing its rights by virtue of the security agreement in state court. It could have sought authority to pursue recourse to the collateral thirty days after the petition was filed when it knew or could have discovered that the debtor had no intention to accede to the alternatives indicated in the notice of intention. The debtor's filing of an amended statement would serve no purpose by way of notifying or informing Sears as to the debtor's intentions. As indicated, it is already well aware of what they are.
As matters now stand, the estate has no interest in this proceeding. This is a contest between a secured consumer creditor and a debtor. Section 521(2)(C) does not permit involuntary redemption or reaffirmation. As indicated, surrender could have been and can be pursued, in appellant's discretion, by foreclosure proceedings under state law.
The order requiring an amended statement of intention is therefore REVERSED.
MEYERS, Bankruptcy Judge, concurring:
I concur in the result reached by the majority. I write separately because I believe reversal is called for without considering the analysis conducted by the majority.
Under Section 521(2)(A), a debtor who schedules consumer debts secured by property of the estate has a duty to file a Statement of Intention as to that property within thirty days of filing the petition, "or within such additional time as the court, for cause, within such period fixes . . ." Furthermore, the debtor shall perform this intention within forty-five days of filing the Statement of Intention. 11 U.S.C. § 521(2)(B). Section 521(2)(B) also provides that the court can extend the time to perform, with the caveat that such an extension must be granted within the forty-five day period.
The Debtor filed her Statement of Intention on July 7, 1995. This filing triggered the forty-five time period under Section 521(2)(B). Sears' motion to compel was not filed until October 2, 1995, long after the time periods under Section 521 had expired. Sears' motion would defeat the intent of Section 521(2)(c) by permitting the debtor to file an amended Statement of Intention after the deadline to do so had expired. It is ironic that a creditor should bring this untimely motion since the purpose of Section 521(2)(c) is to provide protection to secured creditors by requiring the debtor to act promptly with regard to property which is security for a creditor's claim. See, 130 Cong. Rec. H1810 (daily ed. March 21, 1984)(remarks of Rep. Rodino).
While Rule 1009, Fed. Rules Bankruptcy Proc., indicates that the court may have the discretion to grant a creditor's motion to compel the debtor to amend a Statement of Intention, the language in that Rule cannot be read to expand the power vested in the court under Section 521. Indeed, "any conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code." In re Pacific Atlantic, 33 F.3d 1064, 1066 (9th Cir.1994). Since statutory deadlines to file, amend and perform a Statement of Intention had expired before Sears filed its motion, the court could no longer order the Debtor to file an amended Statement of Intention. Accordingly, I would reverse because the court's order exceeded the scope of its authority.
NOTES
[1] Honorable Lloyd King, Bankruptcy Judge for the District of Hawaii, sitting by designation.
[2] In fact, her son, John Mayton, who had graduated from law school ten years previously, prepared the schedule. He appeared for his mother as a paralegal for an attorney, Steve Hertz, who did not appear.
[3] Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. § 101-1330; references to "rule" or "Fed.R.Bankr.P." are to the Federal Rules of Bankruptcy Procedure § 1001-9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").
[4] Section 521(2) provides in pertinent part:

if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate 
(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
(C) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title;
[5] In re Edwards, 901 F.2d 1383 (7th Cir.1990); Taylor v. AGE Federal Credit Union (In re Taylor), 3 F.3d 1512 (11th Cir.1993); In re Johnson, 89 F.3d 249 (5th Cir.1996).
[6] Lowry Federal Credit Union v. West, 882 F.2d 1543 (10th Cir.1989); In re Belanger, 962 F.2d 345 (4th Cir.1992).
[7] Statute not strictly construed: Weir, 173 B.R. 682 (Bankr.E.D.Cal.1984); Sears Roebuck & Co. v. Lamirande, 199 B.R. 221 (D.Mass.1996); In re Ogando 203 B.R. 14 (Bankr.D.Mass.1996); In re Parlato, 185 B.R. 413 (Bankr.D.Conn.1995); In re Doss, 203 B.R. 57 (Bankr.W.D.Va.1996); In re Bracamortes, 166 B.R. 160 (Bankr.S.D.Cal.1994); In re Tameling, 173 B.R. 627 (Bankr.W.D.Mich. 1994); In re Irvine, 192 B.R. 920 (Bankr.N.D.Ill. 1996) (holding that motion to vacate automatic stay rather than motion to compel was proper remedy for the debtor's noncompliance with § 521(2)); In re Harper, 143 B.R. 682 (Bankr. W.D.Tex.1992). Cases holding that debtor must state intentions and fulfill them: In re Kennedy, 137 B.R. 302 (Bankr.E.D.Ark.1992); In re Tucker, 158 B.R. 150 (Bankr.W.D.Mo.1993); In re Gerling, 175 B.R. 295 (Bankr.W.D.Mo.1994); In re Horne, 132 B.R. 661 (Bankr.N.D.Ga.1991); In re Chavarria, 117 B.R. 582 (Bankr.D.Idaho 1990). Both appellant and appellee have focused their arguments on the Chavarria and Bracamortes cases, cited above.
[8] In this case, the debtor could not have reaffirmed the debt since the discharge was entered prior to the entry of the order on appeal. Section 524(d)(1).