## In re James E. BURR and Katherine A. Burr, Debtors.

## The FIRST NATIONAL BANK OF BOSTON, Appellant,

v.

## James E. BURR and Katherine A. Burr, Appellees.

## BAP No. MW 97–010.

United States Bankruptcy Appellate Panel of the First Circuit.

Feb. 27, 1998.

Matthew J. McGowan, and Salter, McGowan & Swartz, Inc., Providence, RI, were on brief, for Bank of Boston, creditor—appellant.

Joel F. Soforenko, Soforenko & Associates, Chicopee, MA, was on brief, for James E. Burr, debtor—appellee.

Before VOTOLATO, Chief Judge, and HAINES and VAUGHN, Bankruptcy Judges.

PER CURIAM.

In dealing with an issue upon which the bankruptcy courts and appellate courts are widely split, the United States Bankruptcy Court for the District of Massachusetts ruled that under 11 U.S.C. § 521(2) debtors must only state their intention whether they will retain or surrender property of the estate that is collateral for a consumer debt. It held that they are not required to perform any one of the three options expressly set forth in the statute. First National Bank of Boston ("First National"), a secured creditor who asked the bankruptcy court for broader § 521(2) relief, appeals. For the reasons below, we affirm the bankruptcy court's decision.

## BACKGROUND

On October 25, 1996, James and Katherine Burr filed a Chapter 7 petition. At that time they owed First National approximately $8,000 on a consumer loan secured by a 1993 Pontiac minivan. The debtors' payments were current, but First National's loan documents provided that filing a petition under the Bankruptcy Code constituted an event of default.

On February 18, 1997, the Bank filed a motion to compel the debtors to reaffirm their debt, or to surrender or redeem the car, pursuant to § 521(2). Alternatively, if the debtors declined to reaffirm their debt, or to surrender or redeem the car, the Bank sought relief from the automatic stay so that it could foreclose on its collateral.

On February 25, 1997, the bankruptcy court entered an endorsement order stating that: "the Debtors shall file a statement indicating whether they intend to retain or surrender the collateral." First National filed a timely notice of appeal, and on March 6, 1997, sought a stay pending appeal to prevent the entry of discharge and to preserve the status quo until its appeal was resolved. We granted the stay in light of the substantial division of authority on the question before us.

## DISCUSSION

■ The only question presented on appeal is one of law. Therefore, we review the bankruptcy court's conclusions *de novo. Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir. 1995); *In re SPM Mfg. Corp.,* 984 F.2d 1305, 1311 (1st Cir.1993); *LaRoche v. Amoskeag Bank,* 969 F.2d 1299, 1301 (1st Cir.1992).

The issue is whether § 521(2) requires only that the debtors indicate whether they intend to surrender or retain the Bank's collateral, or whether it requires more, *i.e.* that, if the debtors state they will retain the collateral, they further declare whether they will redeem it, exempt it or whether they will reaffirm the debt it secures.[1]

Section 521(2), added to the Bankruptcy Code in 1984 as part of the "Consumer Credit Amendments," *see* Pub.L. No. 98–353, 98 Stat. 352–358, Sections 301–324 (1984), provides:

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court,

for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title;

11 U.S.C. § 521(2). The section has been construed differently by five circuit courts of appeal, one bankruptcy appellate panel and various bankruptcy and district courts. The differing opinions may be put into three categories:

### The "Fourth Alternative" Approach

Under this rubric, courts have stated that the three alternatives listed in § 521(2)(A) (i.e., redemption, surrender, or reaffirmation) are not exclusive and that the debtor has a fourth alternative, i.e., to retain the property and maintain current payments, without going further. The leading decision in this category is *In re Belanger,* 962 F.2d 345 (4th Cir.1992), wherein the debtors simply declared that they would retain their mobile home. Although the debtors were current on their monthly payments, the secured creditor filed a motion to compel the debtors to reaffirm the debt, redeem the collateral or surrender the mobile home.

The Fourth Circuit, focusing on the phrase "if applicable", held that the three options listed in the statute are not exclusive, and that the debtor need only execute one of the statutory options "if applicable." 962 F.2d at 348. The court noted that requiring the debtor to *actually perform* one of the three options would make the words "if applicable" meaningless. *Id.* The court considered § 521(2) to be procedural in nature, that its primary function was to provide notice to creditors. 962 F.2d at 347.[2]

---

1. First National also asserts that, should the debtors expressly state their intention as it believes § 521(2)(A) requires, the statute also requires that the debtors perform their selected option within 45 days following their declaration. *See* § 521(2)(B). Although our interpretation of the statute necessitates that we consider § 521(2)(B)'s force in relation to § 521(2)(A), the basis on which such a "performance" order might be obtained is not before us and our dispo-

sition of First National's appeal renders it unnecessary for us to consider it.

2. In a case decided prior to *Belanger,* the Tenth Circuit arrived at a similar result. *See Lowry Fed. Credit Union v. West,* 882 F.2d 1543 (10th Cir.1989). In *Lowry,* the court stated in footnote 2, that the words "if applicable" require every debtor in possession of collateral securing consumer debt to make an election whether to retain or relinquish the collateral and, if retaining, to

The most recent case in this category is from the Second Circuit and it follows *Belanger*. *See Capital Communications Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43 (2d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998). In *Boodrow*, the secured creditor sought relief from stay when the debtor failed to redeem or surrender its collateral (an automobile), or enter into a reaffirmation agreement. The Second Circuit affirmed the bankruptcy court's denial of the relief from stay motion and approved a process called "reinstatement," wherein the debtor retains the collateral and maintains current payments. *Id.*, 126 F.3d at 49. The court adopted *Belanger's* holding and cited § 521's legislative history in support of its conclusion that the statute serves primarily a notice function and was not intended to alter a debtor's substantive bankruptcy and state law options.

### The Plain Meaning Approach

The leading case in this group is *Taylor v. AGE Fed. Cred. Union (In re Taylor)*, 3 F.3d 1512 (11th Cir.1993). In *Taylor*, the Chapter 7 debtors, current on their payments to the secured creditor, indicated on their statement of intention that they would retain their truck, subject to the creditor's security interest. However, they did not indicate whether they would redeem or reaffirm. The Eleventh Circuit rejected *Belanger* and determined § 521(2)'s plain language mandatory in that "the debtor *shall* file a statement of intention," and within forty-five days thereafter "the debtor *shall* perform his intention." 3 F.3d at 1515–16. The court reasoned that the "if applicable" language in § 521(2)(A) applies whenever a debtor intends to retain property, *id.* at 1516, because only then would a debtor specify whether he is claiming the property as exempt, or redeeming or reaffirming. *Id.* The court found nothing in the plain language to provide a debtor with the right to retain the property without performing one of the enumerated options. *Id. Taylor* also noted that

also elect whether to redeem or to reaffirm. Curiously, however, the Court also said that when a debtor chooses to retain the collateral, nothing in the code makes redemption or reaffirmation the exclusive choices. 882 F.2d at 1546.

under § 521(2)(B), retaining the property and continuing payment is not "capable of performance" within 45 days. *Id. See also Johnson v. Sun Fin. Co. (In re Johnson)*, 89 F.3d 249 (5th Cir.1996); *In re Edwards*, 901 F.2d 1383 (7th Cir.1990).

### The Ninth Circuit BAP Approach

Borrowing from the first two approaches, the Ninth Circuit Bankruptcy Appellate Panel has cut a third path. In *Mayton v. Sears, Roebuck & Co. (In re Mayton)*, 208 B.R. 61 (9th Cir. BAP 1997), the debtor filed a Chapter 7 petition and in her statement of intention responded "N/A" as to property to be surrendered or retained. At her creditors' meeting the debtor informed Sears that she still possessed the microwave oven, the washing machine and the sewing machine she had purchased from it. Sears filed a motion to compel the debtor to file an amended statement of intention concerning the items, each of which had been charged on her Sears account (and in which Sears claimed a security interest). The bankruptcy court ordered the debtor to file an amended notice of intention.

The Ninth Circuit BAP reversed, saying that an amended statement of intention would serve little purpose. Focusing on § 521(2)(C)'s declaration that "*nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title*," the BAP observed that § 521(2)(C) preserves the debtor's property rights derived from substantive provisions of the Code and specifically states that subsections (A) and (B) are subservient to those rights. 208 B.R. at 66–67. When the debtor listed "N/A" as her intention, the creditor knew that she intended to retain the collateral without committing herself any further, *id.* at 68. The creditor could have sought authority to look to the collateral thirty days after the petition was filed (relief from stay) when it realized the debtor did not intend to perform any of the alternatives listed in § 521(2). *Id.* at 66–

Courts reviewing *Lowry* have had difficulty reconciling the holding of the case with the language used in footnote 2. *See e.g. Taylor v. AGE Federal Credit Union (In re Taylor)*, 3 F.3d 1512, 1515 (11th Cir.1993).

67. The panel also noted that pursuing surrender (equivalent to foreclosure under state law) was still an option for the creditor, but noted that § 521(2)(C) cannot compel reaffirmation or redemption *involuntarily*. *Id.* at 67.

The *Mayton* panel characterized § 521(2) as a notice statute and held that a debtor's failure to comply with the requirements of the statute does not *automatically* undercut the other substantive rights to which he or she is entitled—i.e., protection of the automatic stay under § 362 and the discharge injunction of § 524(a)(2). *Id.* at 67–68. Thus, *Mayton* does not explicitly approve the "retaining collateral and maintaining current payments approach," nor does it require a debtor who retains collateral to reaffirm or redeem.

### *ANALYSIS*

First National urges *Taylor's* plain meaning approach, while the Debtor pushes for *Belanger's* "fourth alternative." We decline their invitations.

We must start our analysis with the language of the statute before us. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989) (stating that when interpreting a statute, inquiry begins with the statute itself and "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute").

Section 521(2) certainly requires the debtor to do certain things. It mandates, *inter alia*, that: (1) "the debtor *shall* file with the clerk a statement of his intention"; and (2) "within forty-five days after the filing of the notice of intent ... the debtor *shall* perform his intention." 11 U.S.C. § 521(2)(A) and (B) (emphasis added). Putting § 521(2)(C) aside, the language of § 521(2)(A) and (B) is unambiguous. However, when subsection (C) is added to the mix, the issue becomes clouded.

Subsection (C) provides that "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title," rendering it unclear just *what* the debtor *must* do, and just when he or she must do it.

There is scant legislative history available, and it is not of compelling quality.[3] One commentator, reviewing the background of § 521(2)'s enactment, has concluded that § 521(2) is clearly mandatory and that it would be "curious for Congress to order a debtor to perform, but not to restrict the possible options available" to him.[4] There is

---

3. Limited floor discussion is all we have. It consists of a question to Congressman Rodino seeking an explanation of 521(2)(C). Rodino replied:

> [T]his section is designed to make it clear that the newly imposed *duty* on the debtor to act promptly with regard to property which is security for a creditor's claim does not affect the substantive provisions of the code which may grant the trustee or debtor rights with regard to such property. For example, the debtor may have the right to exempt such property under section 522 of the code, and this right is not affected by the new provisions. Similarly, the trustee in bankruptcy may have the power to avoid the creditor's security interest on the property pursuant to the lien avoidance, preference, and fraudulent conveyance provisions of sections 544, 547, or 548 of the code. Such rights are not affected by these new provisions.

130 Cong.Rec. 6200, 6204 (1984) (emphasis added). We are mindful that excerpts from congressional floor discussions are far from compelling evidence of legislative intent.

4. In a recent article, Bankruptcy Judge Jim Pappas opined that Congress intended § 521(2) as more than a notice provision:

> It is true that Section 521(2) satisfies a "notice" function in requiring the debtor to declare an intent in the schedules as to dealing with secured consumer debt. However, the statute goes further by requiring the debtor to perform the stated intention within a fixed period of time. And, as noted in *Taylor*, the performance requirement in the law certainly implies that there must be some act capable of being performed, i.e., surrender, reaffirmation or redemption. If notice to the creditor were the only concern there would be no need to require that a debtor also perform the stated intention.
>
> And while courts like to argue the point, the language of the statute appears clearly mandatory in its terms, not permissive. It commands the debtor to make an election and it requires the debtor to perform the course of action elected. It would be curious for Congress to order a debtor to perform, but not to restrict the possible options available to the debtor.

logic to the observation, but in applying § 521(2) "we must try to give independent meaning to each word." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 976 (1st Cir.1997). Doing so, we see that the statute does require a debtor to specify his or her intention to retain or surrender encumbered property within a limited time. But the combination of § 521(2)(C)'s directive and the statute's silence as to the consequences of a debtor's default of § 521(2) duties, leaves us in the "curious" circumstance that, by virtue of self-contradictory provisions, Congress must have required performance while leaving the debtor's options unrestricted.

■ Section 521(2)(C)'s dictate that nothing in § 521(2)(A) or (B) "shall alter the debtor's or the trustee's rights with regard to such property under [Title 11]" must be kept in mind as we consider the statute's effect. Certainly, that phrase means that significant rights (*e.g.*, rights to assert exemptions, to avoid liens, to unwind fraudulent transfers) are undiminished by § 521(2). Given that no "alteration" is permitted, neither can the debtor's or the trustee's rights in the property be enhanced. And, since the creditor's rights in the collateral are the counterpoint to the debtor's and the estate's, we may conclude that, aside from the substantive (*e.g.*, §§ 522, 544, 548, 722) and procedural (*e.g.*, § 362) rights conferred by the Code, the creditor's rights remain static, as well.

*Belanger 's* "Fourth Alternative" approach and *Taylor 's* "Plain Meaning" approach, each in its own way, operate so bluntly as to override § 521(2)(C)'s directive. The "Fourth Alternative" cases "bless" the "continuing payment" option as substantively permissible—without regard to the fact that bankruptcy itself (or some other aspect of a debtor's conduct) might constitute an actionable breach under the parties' contract and state law.[5] Certainly, nothing in the Bankruptcy Code establishes a debtor's right to discharge personal liability, maintain payments and retain collateral instead of redeeming the collateral or reaffirming the contract.[6]

The "Plain Meaning" cases say that the debtor's *only* alternatives are redemption, reaffirmation, or surrender (and that the court may enter orders compelling their performance) without regard to what the actual terms of the debtor/creditor relationship may be. For example, it is at least conceivable, if unlikely, that a collateralized loan within § 101(8)'s definition of "consumer debt" might lack an ipso facto clause or be nonrecourse. If such were the case, dictating redemption, reaffirmation or surrender as *exclusive* options could effect a substantive alteration of the parties' rights.

Moreover, redemption pursuant to 11 U.S.C. §§ 522(f) and 722, and reaffirmation pursuant to § 524(c) et seq. are voluntary procedures. *See Mayton*, 208 B.R. at 66. *Requiring* the debtor to do either would also violate § 521(2)(C). *See id.* Additionally, compelling the surrender of collateral when the debtor fails to perform his or her duties under § 521(2)(A) or (B), causes a similar problem in light of the automatic stay's independent protection. *Mayton*, 208 B.R. at 67.[7]

---

Jim D. Pappas, *Section 521(2) of the Bankruptcy Code: The Creditor's Predicament in Getting Paid as Agreed*, 99 Com.L.J. 45, 61 (Spring 1994).

5. Under § 521(2), we deal with consumer loan transactions, not with executory contracts and the possibility that contractual *ipso facto* clauses might be nullified. *Cf.* § 365(b)(2).

6. The Second Circuit's use of the term "reinstatement" is troublesome. *Boodrow*, 126 F.3d at 49. It implies that, absent payment default, the debtor-creditor relationship is unchanged and that the debtor, by continuing payments and retaining the collateral, is maintaining the status quo. As articulated, the court's notion of "reinstatement" ignores a fundamental change in the post discharge relationship, *i.e.*, that (in the usual case) the debtor's personal contractual liability is extinguished: the creditor may look only to the collateral for payment.

7. [T]o equate "surrender" as an equivalent to "foreclosure" would amount to abrogation of the automatic stay of § 362 for the benefit of secured consumer creditors. If Congress desired to provide such a distinctive right to a particular class such as consumer secured creditors, it would have said so, particularly in light of § 521(2)(C).

*Mayton*, 208 B.R. at 67.

As matters stand, the estate has no interest. This is strictly a contest between a secured creditor and a consumer debtor. First National's state law rights are unaffected. The bank may have been fully aware of the debtors' intentions, but the bankruptcy judge correctly required them to file a statement expressly disclosing them. Section 521(2) required no more.

## CONCLUSION

Thus, we conclude that the bankruptcy court did not err in ordering that the debtors declare whether they intended to retain or surrender the collateral—and nothing more. Upon compliance with the order, the parties would acquire the knowledge necessary to act on their rights under the contract and the Code. We recognize that our holding casts some doubt on the impact of § 521(2)(B)'s requirement that debtors "perform" their declared intention within 45 days of their declaration. But, as this is not a case in which a declaration (of whatever sort) has been made and not "performed" within the prescribed period, we need not pass on the question. We can say, however, that whatever § 521(2)(B) means, its operation is limited by § 521(2)(C). While leaving much for another day, today's decision recognizes that much.

The court below did not expressly grant or deny the Bank's alternative request for relief from stay. First National has not asserted that the court's inaction constituted a denial of its motion, nor has it appealed the point. Whether relief from stay should have entered, given the parties' respective contractual, state law and bankruptcy rights, is not before us.

Therefore, we affirm the bankruptcy court's order, leaving the parties to renew their dispute below or, more likely, in state court.

The decision of the bankruptcy court is AFFIRMED.