STAHL, Circuit Judge.
 

 This appeal presents a question of statutory interpretation that has divided the circuits: under 11 U.S.C. § 521(2), must debtors in chapter 7 proceedings simply state whether they intend to retain or surrender property of the estate that is collateral for a consumer debt, or (if they intend to retain the property) must they also elect and perform one of three retention options specified in the statute? The bankruptcy court held that chapter 7 debtors wishing to retain property of this nature need not elect or perform any of the specified retention options, and the bankruptcy appellate panel (“BAP”) affirmed, albeit on a somewhat different basis. We reverse.
 

 I.
 

 On October 25,1996, James and Katherine Burr filed a chapter 7 petition. At the time of their filing, the Burrs owed First National Bank of Boston (now BankBoston and hereafter “the Bank”) approximately $8,000 on a consumer loan secured by a 1993 Pontiac minivan. The debtors’ payments under the loan agreement were current, but the agreement provided that the filing of a bankruptcy petition would constitute an event of default.
 

 On February 18, 1997, the Bank filed a motion to compel the debtors to elect and perform one of three courses of conduct: (1) reaffirm their debt under the terms of the original loan agreement (thus giving the bank recourse against them in the event of a default post-discharge); (2) surrender the minivan; or (3) redeem the minivan by paying the bank a lump sum corresponding to the minivan’s value. The motion also set forth an alternative request that, in the event the debtors should decline to reaffirm the debt or to surrender or redeem the minivan, the Bank be relieved from the automatic stay prescribed by 11 U.S.C. § 362 so that it might foreclose on its collateral in state court.
 

 In support of its motion, the Bank argued that it was entitled to relief under the plain language of 11 U.S.C. § 521(2), which provides:
 

 [I]f an individual debtor’s schedule of assets and liabilities includes consumer debts which are secured by the property of the estate — •
 

 (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debt- or intends to reaffirm debts secured by such property;
 

 (B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
 

 (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debt- or’s or the trustee’s rights with regard to such property under this title....
 

 Debtors opposed the Bank’s motion and asserted an entitlement under the Bankruptcy Code to retain the minivan without performing the retention-related options specified in § 521(2)(A), so long as their payments remained current under the original loan agreement.
 

 On February 25, 1997, the bankruptcy court (Queenan, J.) tacitly rejected the Bank’s claimed entitlement to surrender, redemption, or reaffirmation (all agree that the minivan is ineligible for exemption and avoid-
 
 *845
 
 anee of the Bank’s security interest) by entering an endorsed order requiring only that “the Debtors ... file a statement indicating whether they intend to retain or surrender the collateral.” This order (which did not address the Bank’s alternative request for relief from the stay) was consistent with Judge Queenan’s published opinion in
 
 In re Ogando,
 
 203 B.R. 14 (Bkrtey.D.Mass.1996), where he had (1) held that 11 U.S.C. § 521(2) requires nothing more from a debtor than a statement specifying “his intention either to retain or surrender the collateral,”
 
 id.
 
 at 17, and (2) indicated that a chapter 7 debtor may, as a “fourth option,” retain the collateral simply by remaining current on the payments under the original loan agreement,
 
 see id.
 
 The reasoning of
 
 In re Ogando
 
 mirrors, in all relevant respects, the views of the Second, Fourth, Ninth, and Tenth Circuits.
 
 See In re Boodrow,
 
 126 F.3d 43, 53 (2d Cir.1997),
 
 cert. denied,
 
 - U.S. -, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998);
 
 In re Belanger,
 
 962 F.2d 345, 347-48 (4th Cir.1992);
 
 In re Parker,
 
 139 F.3d 668, 672-73 (9th Cir.1998), ce
 
 rt. denied,
 
 - U.S. -, 119 S.Ct. 592, - L.Ed.2d -, 67 U.S.L.W. 3284 (1998) (No. 98-618); and
 
 Lowry Fed. Credit Union v. West,
 
 882 F.2d 1543, 1546-47 (10th Cir.1989);
 
 see also
 
 4
 
 Collier on Bankruptcy,
 
 ¶ 521.10 (15th ed. rev.1998) (endorsing the reasoning of these courts). But it has been rejected by the Fifth, Seventh, and Eleventh Circuits, which hold that a chapter 7 debtor wishing to retain collateral securing a consumer debt must elect and then perform one of the retention options specified in § 521(2)(A).
 
 See In re Johnson,
 
 89 F.3d 249, 250-52 (5th Cir.1996) (per curiam);
 
 In re Edwards,
 
 901 F.2d 1383, 1385-87 (7th Cir.1990); and
 
 In re Taylor,
 
 3 F.3d 1512, 1516-17 (11th Cir.1993).
 

 The BAP affirmed, although it disapproved of the bankruptcy court’s tacit ruling that a chapter 7 debtor may retain the collateral post-discharge simply by continuing to make payments under the original loan agreement.
 
 See In re Burr,
 
 218 B.R. 267, 271-73 (1st Cir.BAP1998). Instead, it followed the approach sketched in
 
 In re Mayton,
 
 208 B.R. 61 (9th Cir.BAP1997), where, in a case preceding
 
 In re Parker,
 
 a Ninth Circuit BAP held (1) that debtors in the circumstances just described need only specify whether they intend to surrender or retain the collateral,
 
 see
 
 '208 B.R. at 66-68; but (2) when the
 
 automatic
 
 stay of 11 U.S.C. § 362 expires upon discharge, secured creditors may foreclose on the collateral (so long as the bankruptcy was an event of default),
 
 see id. See In re Burr,
 
 218 B.R. at 272-73. This appeal followed.
 

 II.
 

 We set to one side the dispute over whether debtors may retain the collateral post-discharge if they remain current on their payments under the original loan agreement, and begin by noting that courts deciding whether the list of retention options specified in 11 U.S.C. § 521(2)(A) is exhaustive have interpreted the statute in one of the three ways. The first interpretation — that the plain language of § 521(2) contemplates retention options beyond those specified in § 521(2)(A) — is most forcefully articulated in
 
 In re Parker.
 
 There, the Ninth Circuit construed § 521(2)(A) to require only the filing of a statement of intention.
 
 See
 
 139 F.3d at 673 (“[T]he only mandatory act is the filing of the statement of intention, which the debtor ‘shall’ file.”).
 

 Then, “if applicable,” — that is, if the debtor plans to choose any of the three options listed later in the statute (claiming the property as exempt, redeeming the property, or reaffirming the debt) — the debtor must so specify in the statement of intention. The debtor’s other options remain available, as unambiguously stated in § 521(2)(C): “[N]othing in subpara-graph! ](A) ... shall alter the debtor’s or the trustee’s rights with regard to such property under this title.”
 

 Id.
 

 The second interpretation — that 11 U.S.C. § 521(2), taken as a whole, is ambiguous— begins with the proposition, stated in the opinion of the BAP, that § 521(2)(A) mandates election of one the specified retention options and that § 521(2)(B) directs performance of the elected option:
 

 Section 521(2) certainly requires the debt- or to do certain things. It mandates,
 
 inter alia,
 
 that: (1) “the debtor
 
 shall
 
 file with
 
 *846
 
 the clerk a statement of his intention”; and (2) “within forty-five days after the filing of the notice of intent ... the debtor
 
 shall
 
 perform his intention.” 11 U.S.C. § 521(2)(A) and (B) (emphasis added). Putting § 521(2)(C) aside, the language of § 521(2)(A) and (B) is unambiguous.
 

 In re Burr,
 
 218 B.R. at 271. By focusing on § 521(2)(B)’s requirement that the debtor’s intention be performed within forty-five days, the BAP thus rejected the view, exemplified by
 
 In re Parker,
 
 that the statute unambiguously contemplates options beyond those listed in § 521(2)(A). In the BAP’s view, if the stated intention need be performed within forty-five days, the retain-and-keep-current option (which is not capable of “performance” within forty-five days) simply cannot be said to have been plainly within the contemplation of Congress.
 
 See
 
 218 B.R. at 271-73.
 

 Yet the BAP saw 11 U.S.C. § 521(2)(C), which provides that “nothing in subpara-graphs (A) and (B) of this paragraph shall alter the debtor’s or the trustee’s rights with regard to such property under this title,” as raising questions whether the unambiguous requirements of § 521(2)(A) and (B) are enforceable.
 
 See id.
 
 at 271. Specifically, the BAP was concerned that reading § 521(2)(A) as setting forth exclusive retention options would undermine § 521(2)(C)’s directive that the statute not be read to diminish rights otherwise available to debtors under the Bankruptcy Code.
 
 See id.
 
 at 272. For instance,
 

 it is at least conceivable, if unlikely, that a collateralized loan within [11 U.S.C.] § 101(8)’s definition of “consumer debt” might lack an ipso facto clause [making the filing of a bankruptcy petition an event of default] or be nonrecourse. If such were the case, dictating redemption, reaffirmation or surrender as
 
 exclusive
 
 options could effect a substantive alteration of the parties’ rights.
 

 Id.
 

 The BAP continued:
 

 Moreover, redemption pursuant to 11 U.S.C. §§ 522(f) and 722, and reaffirmation pursuant to § 524(c) et seq. are voluntary procedures.
 
 Requiring
 
 the debtor to do either would also violate § 521(2)(C). Additionally, compelling the surrender of collateral when the debtor fails to perform his or her duties under § 521(2)(A) or (B) causes a similar problem in light of the automatic stay’s independent protection.
 

 Id.
 
 (citations omitted). This perceived incompatibility between the requirements of § 521(2)(A) and (B) and rights debtors otherwise hold led the BAP, acting pursuant to § 521(2)(C), to decline to enforce these requirements: “[W]e conclude that the bankruptcy court did not err in ordering that the debtors declare whether they intended to retain or surrender the collateral — and nothing more.”
 
 Id.
 
 at 273.
 

 The final interpretation — that the language of 11 U.S.C. § 521(2) unambiguously requires a debtor retaining collateral which secures consumer debt to elect and then perform one of the retention options specified in § 521(2)(A) — is elaborated by Judge Shadur in his dissenting opinion in
 
 In re Boodrow.
 
 The essence of this position is that the words “if applicable,” as used in § 521(2)(A) (“the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and,
 
 if applicable,
 
 specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm the debts secured by such property”) (emphasis added), should not be understood to mean that a debtor need list one of the three later-specified retention options only if he or she is electing it from the panoply of options (some stated; others not) available to chapter 7 debtors.
 
 See id.
 
 at 57-59 (Shadur, J., dissenting). Rather, the words “if applicable” should be understood to mean that if retention is selected from the two general options available (retention or surrender), then the debtor must specify one of the three listed retention options.
 
 See id.
 
 As Judge Shadur put it:
 

 [A] reading of the “if applicable” phrase ... to connote the existence of an unexpressed “fourth option” ... demands an inordinately awkward use of the statutory language. That construction reads the statute both (1) as though Congress had said that the statutorily identified options of exemption, redemption, or reaffirmation
 
 *847
 
 would be the only ones available solely if the debtor decides that one of those “is applicable” (something Congress certainly did not say) and (2) as though Congress had also said (as it also certainly did not) that some alternative other than those three choices was available if the debtor decided on such other alternative. By contrast, it is perfectly conventional usage— and perfectly good English — for someone to employ the “if applicable” language in the statute as a shorthand way of calling for a choice between A and B and, only if B “is applicable,” then a further choice among subsets of B.
 

 Id.
 
 at 59.
 

 Judge Shadur bolstered his reading of the statute with a number of additional observations. Echoing the point emphasized by the BAP in this case, he first noted that 11 U.S.C. § 521(2)(B)’s mandate of performance of the elected retention option within forty-five days “is totally at odds with any concept of Congress having contemplated a ‘fourth option’ involving a continued and extended payout schedule that would run the length of the underlying consumer debt contract — a period of many months (or years) in most cases.”
 
 Id.
 
 He next stated that “the absence from the Bankruptcy Code of any provision that would expressly permit the ‘fourth option,’ ”
 
 id.
 
 at 60, in combination with the fact that, at the time § 521(2) was enacted, at least three courts had held that a chapter 7 debtor had no right to continue performance under a secured consumer debt contract absent creditor-appi'oved reaffirmation,
 
 see id.
 
 at 59-60, all but compels the conclusion that the qualifying language of § 521(2)(C) is “perfectly consistent” with “limiting a Chapter 7 debtor to the three options expressly articulated in Section 521(2)(A),”
 
 id.
 
 at 59.
 

 Along these same lines, Judge Shadur also pointed out that it would be the rare debtor indeed who would elect reaffirmation or redemption over the unstated fourth option, which neither requires a large lump sum payment (redemption) nor resuscitates personal liability for the underlying debt post-discharge (reaffirmation).
 
 See id.
 
 at 60. Why, then, would Congress specify the seldom-to-be-used devices of redemption and reaffirmation, but leave unspecified the option that would be almost universally employed?
 
 See id.
 
 Judge Shadur concluded by noting that, in the context of chapter 13 of the Bankruptcy Code, Congress explicitly provided for a “cram down” provision by which a debtor may retain property over the objection of a secured creditor by keeping current on his or her payments.
 
 See id.
 
 at 60-61. This, of course, strongly suggests that it would be impx-oper to infer congressional approval of a similar “cram down” option in the present context: “[W]hen Congress wants to provide for a ‘cram down’ that enables a debtor to keep property over the objection of a secured creditor, it knows full well how to do so.”
 
 Id.
 
 at 60.
 

 III.
 

 The appellate positions of the parties are not sui’prising. The Bank urges us to follow the approach of Judge Shadur and the Fifth, Seventh, and Eleventh Circuits and to declare the retention options set forth in 11 U.S.C. § 521(2)(A) both unambiguously exhaustive and enforceable. Debtors, ably assisted by amicus curiae the National Association of Consumer Bankruptcy Attoxmeys, counter -with alternative arguments: section 521(2) either unambiguously countenances unstated retention options beyond those specified in § 521(2)(A) (per the Ninth Circuit), or it is ambiguous (for the reasons stated by the BAP in this case) and must, because of the “fresh start” policy underlying the Bankruptcy Code, be interpreted to allow for the unspecified, fourth, retain-and-keep-current option (per the Second, Fourth, and Tenth Circuits). We are persuaded by the Bank’s argument.
 

 As an initial matter, we reject the claim that 11 U.S.C. § 521(2) unambiguously contemplates retention options other than those specified in the statute. For one thing, the only non-specified retention option posited by the debtors is the retain-and-keep-current option, and that option is not, as many courts have recognized, capable of performance within forty-five days of the filing of the statement of intention, as § 521(2)(B) requires.
 
 See, e.g., In re Boodrow,
 
 126 F.3d at 59 (Shadur, J., dissenting);
 
 In re Taylor,
 
 3
 
 *848
 
 F.3d at 1516. For another, we completely agree with Judge Shadur, for the reasons he sets forth, that it would be “inordinately awkward” to read § 521(2)(A) as connoting the existence of at least one, unspecified, fourth option.
 
 See In re Boodrow,
 
 126 F.3d at 59 (Shadur, J., dissenting). We also agree that it is perfectly conventional usage, and perfectly good English, for Congress to have phrased § 521(2)(A) in the way it did because it intended chapter 7 debtors to elect surrender or retention, and then, “if’ retention is “applicable,” to specify which of the following three retention options they intend to employ.
 
 See id.
 
 In so ruling, we reject the debtors’ argument that the reading we adopt renders the words “if applicable” redundant.
 
 See In re Belanger,
 
 962 F.2d at 348. While the point might be obvious, the phrase “if applicable” makes completely explicit that, in the event of a surrender of collateral, exemption, reaffirmation, and redemption will have no application.
 

 We are left, then, to consider whether 11 U.S.C. § 521(2)(C) should cause us to decline to enforce the directives of § 521(2)(A) and (B). Following the lead of the BAP below, debtors and amicus suggest that enforcing these directives would deprive debtors of rights they otherwise enjoy, in contravention of § 521(2)(C). We disagree. Section 521(2)(C) merely acts to make supreme over the directives of § 521(2)(A) and (B) rights conferred upon the trustee and debtor
 
 elsewhere in the Bankruptcy Code. See id.
 
 (“[Njothing in subparagraphs (A) and (B)of this paragraph shall alter the debtor’s or the trustee’s rights ...
 
 under this title
 
 ____”) (emphasis supplied). When this is properly understood, any appearance of self-contradiction evaporates. Chapter 7 debtors do not, of course, enjoy a freestanding right under the Bankruptcy Code to retain property securing a consumer debt merely by keeping current on their payments under old loan agreements. Nor do they maintain a freestanding right under the Code to maintain with their secured creditors advantageous arrangements in place prior to fifing. For this reason, we see as beside the point the BAP’s concern that giving effect to § 521(2)(A) and (B) might alter the rights of those extraordinarily rare debtors with consumer loan agreements that are either nonrecourse or that lack ipso facto clauses. After all, any such rights altered by operation of the directives of § 521(2)(A) and (B) do not derive from the Bankruptcy Code; they are enforceable only under- state law. And the loss of such state law rights is one of the costs of a chapter 7 discharge.
 

 Nor do we see a contradiction between 11 U.S.C. § 521(2)(C) and either the voluntary nature of redemption and reaffirmation or the automatic stay of 11 U.S.C. § 362. We do not doubt that redemption is beyond the means of most chapter 7 debtors, and that chapter 7 debtors wishing to retain consumer goods on which they owe money will, as a practical matter, be compelled to enter into reaffirmation agreements with their secured creditors. Nor do we doubt that some ov-ersecured creditors may use their superior bargaining power to attempt to impose additional, creditor-friendly terms in any new agreement. But strictly speaking, debtors are never “forced” to enter into reaffirmation agreements; they can always surrender the property and be discharged of the underlying debt. Or, rather than filing for chapter 7 protection, debtors can petition to reorganize under chapter 13 and take advantage of the cram down provision available to chapter 13 petitioners.
 
 See
 
 11 U.S.C. § 1325(a)(5)(B). Again, we emphasize that a chapter 7 discharge is a benefit that comes with certain costs.
 

 With respect to the perceived contradiction between “involuntary” surrender and the automatic stay, we perhaps would have cause for concern if, in fact, the effect of 11 U.S.C. § 521(2) were that most debtors were forced to surrender their collateral. But as amicus itself recognizes, the fact is that most secured creditors in circumstances such as these will prefer to enter reaffirmation agreements containing identical terms to the old agreements over the costs associated with accepting back, and then disposing of, surrendered collateral.
 
 See
 
 Amicus Brief at 19-22 (acknowledging the incentives most creditors have to enter reaffirmation agreements). Moreover, one court has support-ably concluded that a chapter 7 debtor complies with 11 U.S.C. § 521(2)(A) and (B), and
 
 *849
 
 therefore is entitled to retain the property in question, simply by offering to reaffirm under the old contractual terms, attempting in good faith to negotiate a reaffirmation agreement with the creditor, and taking all steps otherwise necessary to reaffirm a debt under § 524.
 
 See In re French,
 
 185 B.R. 910, 914 (Bkrtcy.M.D.Fla.1995);
 
 but cf., e.g., In re Turner,
 
 156 F.3d 713, 718-21 (7th Cir.1998) (chapter 7 debtors’ unilateral statements of reaffirmation, filed without notice to or the consent of creditors, were not valid reaffirmation agreements under § 521(2)(A)). We need not and do not decide whether
 
 In re French
 
 was correctly decided; we only observe that the regime unambiguously prescribed by § 521(2)(A) and (B) does not so clearly undermine a chapter 7 debtor’s other Code-conferred rights as to be unenforceable.
 

 We conclude with two miscellaneous points responsive to arguments made in the parties’ briefs. First, we are distinctly unimpressed with the tentative and unelaborated suggestion of amicus that 11 U.S.C. § 521(2)(A)’s reference to exemption as a retention option, along with its concomitant failure to mention § 522(f)’s lien avoidance procedure as yet another retention option, is tantamount to a textual endorsement of the retain-and-keep-eurrent option. There is no suggestion in the Code that a debtor can exempt property by making payments under a pre-petition loan agreement, and lien avoidance is just that — lien avoidance. It is not, in and of itself, a retention option. Second, because we resolve this case on the plain language of the statute, we have no need to plumb the sparse legislative history or to resolve the parties’ fundamental disagreement about whether enforcement of § 521(2)(A) and (B) would further, or undermine, the general policies of the Bankruptcy Code. We do observe, however, that nothing in the legislative history militates against the result we reach today. Nor does our ruling run counter to policy judgments plainly underlying the Code.
 

 IV.
 

 For the reasons stated, we believe that 11 U.S.C. § 521(2) unambiguously requires chapter 7 debtors wishing to retain property of the estate that secures a consumer debt to elect one of the retention options specified in 11 U.S.C. § 521(2)(A), and then to perform the elected option in accordance with 11 U.S.C. § 521(2)(B). We therefore
 
 reverse
 
 and
 
 remand
 
 to the BAP for further proceedings consistent with this opinion.
 

 Reversed and remanded.
 
 No costs.