USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-9007

 IN RE: JAMES E. BURR AND KATHERINE A. BURR,

 Debtors.

 _____________________
 
 BANK OF BOSTON,
 
 Appellant,
 
 v.
 
 JAMES E. BURR AND KATHERINE A. BURR,
 
 Appellees.
 

APPEAL FROM A JUDGMENT OF THE UNITED STATES 
BANKRUPTCY APPELLATE PANEL OF THE FIRST CIRCUIT
 
 

 Before
 
 Stahl, Circuit Judge,
 Lipez, Circuit Judge,
 and Reavley,* Senior Circuit Judge.
 

 Matthew J. McGowan with whom Salter McGowan Swartz & Sylviawas on brief for appellants.
 Joel F. Soforenko for appellees.
 John Rao on brief for National Consumer Law Center, Inc.,
amicus curiae.

November 25, 1998

_____________________
*of the Fifth Circuit, sitting by designation. STAHL, Circuit Judge. This appeal presents a question of
statutory interpretation that has divided the circuits: under 11
U.S.C. 521(2), must debtors in chapter 7 proceedings simply state
whether they intend to retain or surrender property of the estate
that is collateral for a consumer debt, or (if they intend to
retain the property) must they also elect and perform one of three
retention options specified in the statute? The bankruptcy court
held that chapter 7 debtors wishing to retain property of this
nature need not elect or perform any of the specified retention
options, and the bankruptcy appellate panel ("BAP") affirmed,
albeit on a somewhat different basis. We reverse.
 I.
 On October 25, 1996, James and Katherine Burr filed a
chapter 7 petition. At the time of their filing, the Burrs owed
First National Bank of Boston (now BankBoston and hereafter "the
Bank") approximately $8,000 on a consumer loan secured by a 1993
Pontiac minivan. The debtors' payments under the loan agreement
were current, but the agreement provided that the filing of a
bankruptcy petition would constitute an event of default.
 On February 18, 1997, the Bank filed a motion to compel
the debtors to elect and perform one of three courses of conduct: 
(1) reaffirm their debt under the terms of the original loan
agreement (thus giving the bank recourse against them in the event
of a default post-discharge); (2) surrender the minivan; or (3)
redeem the minivan by paying the bank a lump sum corresponding to
the minivan's value. The motion also set forth an alternative
request that, in the event the debtors should decline to reaffirm
the debt or to surrender or redeem the minivan, the Bank be
relieved from the automatic stay prescribed by 11 U.S.C. 362 so
that it might foreclose on its collateral in state court. 
 In support of its motion, the Bank argued that it was
entitled to relief under the plain language of 11 U.S.C. 521(2),
which provides:
 [I]f an individual debtor's schedule of assets
 and liabilities includes consumer debts which
 are secured by the property of the estate 

 (A) within thirty days after the date
 of the filing of a petition under chapter 7 of
 this title or on or before the date of the
 meeting of creditors, whichever is earlier, or
 within such additional time as the court, for
 cause, within such period fixes, the debtor
 shall file with the clerk a statement of his
 intention with respect to the retention or
 surrender of such property and, if applicable,
 specifying that such property is claimed as
 exempt, that the debtor intends to redeem such
 property, or that the debtor intends to
 reaffirm debts secured by such property;

 (B) within forty-five days after the
 filing of a notice of intent under this
 section, or within such additional time as the
 court, for cause, within such forty-five day
 period fixes, the debtor shall perform his
 intention with respect to such property, as
 specified by subparagraph (A) of this
 paragraph; and

 (C) nothing in subparagraphs (A) and
 (B) of this paragraph shall alter the debtor's
 or the trustee's rights with regard to such
 property under this title . . . .

Debtors opposed the Bank's motion and asserted an entitlement under
the Bankruptcy Code to retain the minivan without performing the
retention-related options specified in 521(2)(A), so long as
their payments remained current under the original loan agreement.
 On February 25, 1997, the bankruptcy court (Queenan, J.)
tacitly rejected the Bank's claimed entitlement to surrender,
redemption, or reaffirmation (all agree that the minivan is
ineligible for exemption and avoidance of the Bank's security
interest) by entering an endorsed order requiring only that "the
Debtors . . . file a statement indicating whether they intend to
retain or surrender the collateral." This order (which did not
address the Bank's alternative request for relief from the stay)
was consistent with Judge Queenan's published opinion in In re
Ogando, 203 B.R. 14 (Bkrtcy. D. Mass. 1996), where he had (1) held
that 11 U.S.C. 521(2) requires nothing more from a debtor than a
statement specifying "his intention either to retain or surrender
the collateral," id. at 17, and (2) indicated that a chapter 7
debtor may, as a "fourth option," retain the collateral simply by
remaining current on the payments under the original loan
agreement, see id. The reasoning of In re Ogando mirrors, in all
relevant respects, the views of the Second, Fourth, Ninth, and
Tenth Circuits. See In re Boodrow, 126 F.3d 43, 53 (2d Cir. 1997),
cert. denied, 118 S. Ct. 1055 (1998); In re Belanger, 962 F.2d 345,
347-48 (4th Cir. 1992); In re Parker, 139 F.3d 668, 672-73 (9th Cir.
1998), petition for cert. filed, 67 U.S.L.W. 3284 (Oct. 7, 1998)
(No. 98-618); and Lowry Fed. Credit Union v. West, 882 F.2d 1543,
1546-47 (10th Cir. 1989); see also 4 Collier on Bankruptcy, 521.10
(15th ed. rev. 1998) (endorsing the reasoning of these courts). But
it has been rejected by the Fifth, Seventh, and Eleventh Circuits,
which hold that a chapter 7 debtor wishing to retain collateral
securing a consumer debt must elect and then perform one of the
retention options specified in 521(2)(A). See In re Johnson, 89
F.3d 249, 250-52 (5th Cir. 1996) (per curiam); In re Edwards, 901
F.2d 1383, 1385-87 (7th Cir. 1990); and In re Taylor, 3 F.3d 1512,
1516-17 (11th Cir. 1993).
 The BAP affirmed, although it disapproved of the
bankruptcy court's tacit ruling that a chapter 7 debtor may retain
the collateral post-discharge simply by continuing to make payments
under the original loan agreement. See In re Burr, 218 B.R. 267,
271-73 (1st Cir. BAP 1998). Instead, it followed the approach
sketched in In re Mayton, 208 B.R. 61 (9th Cir. BAP 1997), where,
in a case preceding In re Parker, a Ninth Circuit BAP held (1) that 
debtors in the circumstances just described need only specify
whether they intend to surrender or retain the collateral, see 208
B.R. at 66-68; but (2) when the automatic stay of 11 U.S.C. 362
expires upon discharge, secured creditors may foreclose on the
collateral (so long as the bankruptcy was an event of default), seeid. See In re Burr, 218 B.R. at 272-73. This appeal followed.
 

 II.
 We set to one side the dispute over whether debtors may
retain the collateral post-discharge if they remain current on
their payments under the original loan agreement, and begin by
noting that courts deciding whether the list of retention options
specified in 11 U.S.C. 521(2)(A) is exhaustive have interpreted
the statute in one of the three ways. The first interpretation 
that the plain language of 521(2) contemplates retention options
beyond those specified in 521(2)(A) is most forcefully
articulated in In re Parker. There, the Ninth Circuit construed
 521(2)(A) to require only the filing of a statement of intention. 
See 139 F.3d at 673 ("[T]he only mandatory act is the filing of the
statement of intention, which the debtor 'shall' file."). 
 Then, "if applicable," that is, if the
 debtor plans to choose any of the three
 options listed later in the statute (claiming
 the property as exempt, redeeming the
 property, or reaffirming the debt) the debtor
 must so specify in the statement of intention. 
 The debtor's other options remain available,
 as unambiguously stated in 521(2)(C): 
 "[N]othing in subparagraph[](A) . . . shall
 alter the debtor's or the trustee's rights
 with regard to such property under this
 title."

Id.
 The second interpretation that 11 U.S.C. 521(2),
taken as a whole, is ambiguous begins with the proposition,
stated in the opinion of the BAP, that 521(2)(A) mandates
election of one the specified retention options and that 
521(2)(B) directs performance of the elected option:
 Section 521(2) certainly requires the debtor
 to do certain things. It mandates, interalia, that: (1) "the debtor shall file with
 the clerk a statement of his intention"; and
 (2) "within forty-five days after the filing
 of the notice of intent . . . the debtor shallperform his intention." 11 U.S.C. 521(2)(A)
 and (B) (emphasis added). Putting 521(2)(C)
 aside, the language of 521(2)(A) and (B) is
 unambiguous.

In re Burr, 218 B.R. at 271. By focusing on 521(2)(B)'s
requirement that the debtor's intention be performed within forty-
five days, the BAP thus rejected the view, exemplified by In re
Parker, that the statute unambiguously contemplates options beyond
those listed in 521(2)(A). In the BAP's view, if the stated
intention need be performed within forty-five days, the retain-and-
keep-current option (which is not capable of "performance" within
forty-five days) simply cannot be said to have been plainly within
the contemplation of Congress. See 218 B.R. at 271-73.
 Yet the BAP saw 11 U.S.C. 521(2)(C), which provides
that "nothing in subparagraphs (A) and (B) of this paragraph shall
alter the debtor's or the trustee's rights with regard to such
property under this title," as raising questions whether the
unambiguous requirements of 521(2)(A) and (B) are enforceable. 
See id. at 271. Specifically, the BAP was concerned that reading
 521(2)(A) as setting forth exclusive retention options would
undermine 521(2)(C)'s directive that the statute not be read to
diminish rights otherwise available to debtors under the Bankruptcy
Code. See id. at 272. For instance,
 it is at least conceivable, if unlikely, that
 a collateralized loan within [11 U.S.C.]
 101(8)'s definition of "consumer debt" might
 lack an ipso facto clause [making the filing
 of a bankruptcy petition an event of default]
 or be nonrecourse. If such were the case,
 dictating redemption, reaffirmation or
 surrender as exclusive options could effect a
 substantive alteration of the parties' rights. 
 
Id.
 The BAP continued:
 Moreover, redemption pursuant to 11
 U.S.C. 522(f) and 722, and reaffirmation
 pursuant to 524(c) et seq. are voluntary
 procedures. Requiring the debtor to do either
 would also violate 521(2)(C). Additionally,
 compelling the surrender of collateral when
 the debtor fails to perform his or her duties
 under 521(2)(A) or (B) causes a similar
 problem in light of the automatic stay's
 independent protection.

Id. (citations omitted). This perceived incompatibility between
the requirements of 521(2)(A) and (B) and rights debtors
otherwise hold led the BAP, acting pursuant to 521(2)(C), to
decline to enforce these requirements: "[W]e conclude that the
bankruptcy court did not err in ordering that the debtors declare
whether they intended to retain or surrender the collateral and
nothing more." Id. at 273.
 The final interpretation that the language of 11 U.S.C.
 521(2) unambiguously requires a debtor retaining collateral which
secures consumer debt to elect and then perform one of the
retention options specified in 521(2)(A) is elaborated by Judge
Shadur in his dissenting opinion in In re Boodrow. The essence of
this position is that the words "if applicable," as used in
 521(2)(A) ("the debtor shall file with the clerk a statement of
his intention with respect to the retention or surrender of such
property and, if applicable, specifying that such property is
claimed as exempt, that the debtor intends to redeem such property,
or that the debtor intends to reaffirm the debts secured by such
property") (emphasis added), should not be understood to mean that
a debtor need list one of the three later-specified retention
options only if he or she is electing it from the panoply of
options (some stated; others not) available to chapter 7 debtors. 
See id. at 57-59 (Shadur, J., dissenting). Rather, the words "if
applicable" should be understood to mean that if retention is
selected from the two general options available (retention or
surrender), then the debtor must specify one of the three listed
retention options. See id. As Judge Shadur put it:
 [A] reading of the "if applicable" phrase 
 . . . to connote the existence of an
 unexpressed "fourth option" . . . demands an
 inordinately awkward use of the statutory
 language. That construction reads the statute
 both (1) as though Congress had said that the
 statutorily identified options of exemption,
 redemption, or reaffirmation would be the only
 ones available solely if the debtor decides
 that one of those "is applicable" (something
 Congress certainly did not say) and (2) as
 though Congress had also said (as it also
 certainly did not) that some alternative other
 than those three choices was available if the
 debtor decided on such other alternative. By
 contrast, it is perfectly conventional usage 
 and perfectly good English for someone to
 employ the "if applicable" language in the
 statute as a shorthand way of calling for a
 choice between A and B and, only if B "is
 applicable," then a further choice among
 subsets of B.

Id. at 59.
 Judge Shadur bolstered his reading of the statute with a
number of additional observations. Echoing the point emphasized by
the BAP in this case, he first noted that 11 U.S.C. 521(2)(B)'s
mandate of performance of the elected retention option within
forty-five days "is totally at odds with any concept of Congress
having contemplated a 'fourth option' involving a continued and
extended payout schedule that would run the length of the
underlying consumer debt contract a period of many months (or
years) in most cases." Id. He next stated that "the absence from
the Bankruptcy Code of any provision that would expressly permit
the 'fourth option,'" id. at 60, in combination with the fact that,
at the time 521(2) was enacted, at least three courts had held
that a chapter 7 debtor had no right to continue performance under
a secured consumer debt contract absent creditor-approved
reaffirmation, see id. at 59-60, all but compels the conclusion
that the qualifying language of 521(2)(C) is "perfectly
consistent" with "limiting a Chapter 7 debtor to the three options
expressly articulated in Section 521(2)(A)," id. at 59. 
 Along these same lines, Judge Shadur also pointed out
that it would be the rare debtor indeed who would elect
reaffirmation or redemption over the unstated fourth option, which
neither requires a large lump sum payment (redemption) nor
resuscitates personal liability for the underlying debt post-
discharge (reaffirmation). See id. at 60. Why, then, would
Congress specify the seldom-to-be-used devices of redemption and
reaffirmation, but leave unspecified the option that would be
almost universally employed? See id. Judge Shadur concluded by
noting that, in the context of chapter 13 of the Bankruptcy Code,
Congress explicitly provided for a "cram down" provision by which
a debtor may retain property over the objection of a secured
creditor by keeping current on his or her payments. See id. at 60-
61. This, of course, strongly suggests that it would be improper
to infer congressional approval of a similar "cram down" option in
the present context: "[W]hen Congress wants to provide for a 'cram
down' that enables a debtor to keep property over the objection of
a secured creditor, it knows full well how to do so." Id. at 60.
 III.
 The appellate positions of the parties are not
surprising. The Bank urges us to follow the approach of Judge
Shadur and the Fifth, Seventh, and Eleventh Circuits and to declare
the retention options set forth in 11 U.S.C. 521(2)(A) both
unambiguously exhaustive and enforceable. Debtors, ably assisted
by amicus curiae the National Association of Consumer Bankruptcy
Attorneys, counter with alternative arguments: section 521(2)
either unambiguously countenances unstated retention options beyond
those specified in 521(2)(A) (per the Ninth Circuit), or it is
ambiguous (for the reasons stated by the BAP in this case) and
must, because of the "fresh start" policy underlying the Bankruptcy
Code, be interpreted to allow for the unspecified, fourth, retain-
and-keep-current option (per the Second, Fourth, and Tenth
Circuits). We are persuaded by the Bank's argument.
 As an initial matter, we reject the claim that 11 U.S.C.
 521(2) unambiguously contemplates retention options other than
those specified in the statute. For one thing, the only non-
specified retention option posited by the debtors is the retain-
and-keep-current option, and that option is not, as many courts
have recognized, capable of performance within forty-five days of
the filing of the statement of intention, as 521(2)(B) requires. 
See, e.g., In re Boodrow, 126 F.3d at 59 (Shadur, J., dissenting);
In re Taylor, 3 F.3d at 1516. For another, we completely agree
with Judge Shadur, for the reasons he sets forth, that it would be
"inordinately awkward" to read 521(2)(A) as connoting the
existence of at least one, unspecified, fourth option. See In re
Boodrow, 126 F.3d at 59 (Shadur, J., dissenting). We also agree
that it is perfectly conventional usage, and perfectly good
English, for Congress to have phrased 521(2)(A) in the way it did
because it intended chapter 7 debtors to elect surrender or
retention, and then, "if" retention is "applicable," to specify
which of the following three retention options they intend to
employ. See id. In so ruling, we reject the debtors' argument
that the reading we adopt renders the words "if applicable"
redundant. See In re Belanger, 962 F.2d at 348. While the point
might be obvious, the phrase "if applicable" makes completely
explicit that, in the event of a surrender of collateral,
exemption, reaffirmation, and redemption will have no application. 
 We are left, then, to consider whether 11 U.S.C.
 521(2)(C) should cause us to decline to enforce the directives of
 521(2)(A) and (B). Following the lead of the BAP below, debtors
and amicus suggest that enforcing these directives would deprive
debtors of rights they otherwise enjoy, in contravention of
 521(2)(C). We disagree. Section 521(2)(C) merely acts to make
supreme over the directives of 521(2)(A) and (B) rights conferred
upon the trustee and debtor elsewhere in the Bankruptcy Code. Seeid. ("[N]othing in subparagraphs (A) and (B)of this paragraph shall
alter the debtor's or the trustee's rights . . . under this title. . . .") (emphasis supplied). When this is properly understood,
any appearance of self-contradiction evaporates. Chapter 7 debtors
do not, of course, enjoy a freestanding right under the Bankruptcy
Code to retain property securing a consumer debt merely by keeping
current on their payments under old loan agreements. Nor do they
maintain a freestanding right under the Code to maintain with their
secured creditors advantageous arrangements in place prior to
filing. For this reason, we see as beside the point the BAP's
concern that giving effect to 521(2)(A) and (B) might alter the
rights of those extraordinarily rare debtors with consumer loan
agreements that are either nonrecourse or that lack ipso facto
clauses. After all, any such rights altered by operation of the
directives of 521(2)(A) and (B) do not derive from the Bankruptcy
Code; they are enforceable only under state law. And the loss of
such state law rights is one of the costs of a chapter 7 discharge.
 Nor do we see a contradiction between 11 U.S.C.
 521(2)(C) and either the voluntary nature of redemption and
reaffirmation or the automatic stay of 11 U.S.C. 362. We do not
doubt that redemption is beyond the means of most chapter 7
debtors, and that chapter 7 debtors wishing to retain consumer
goods on which they owe money will, as a practical matter, be
compelled to enter into reaffirmation agreements with their secured
creditors. Nor do we doubt that some oversecured creditors may use
their superior bargaining power to attempt to impose additional,
creditor-friendly terms in any new agreement. But strictly
speaking, debtors are never "forced" to enter into reaffirmation
agreements; they can always surrender the property and be
discharged of the underlying debt. Or, rather than filing for
chapter 7 protection, debtors can petition to reorganize under
chapter 13 and take advantage of the cram down provision available
to chapter 13 petitioners. See 11 U.S.C. 1325(a)(5)(B). Again,
we emphasize that a chapter 7 discharge is a benefit that comes
with certain costs. 
 With respect to the perceived contradiction between
"involuntary" surrender and the automatic stay, we perhaps would
have cause for concern if, in fact, the effect of 11 U.S.C.
 521(2) were that most debtors were forced to surrender their
collateral. But as amicus itself recognizes, the fact is that most
secured creditors in circumstances such as these will prefer to
enter reaffirmation agreements containing identical terms to the
old agreements over the costs associated with accepting back, and
then disposing of, surrendered collateral. See Amicus Brief at 19-
22 (acknowledging the incentives most creditors have to enter
reaffirmation agreements). Moreover, one court has supportably
concluded that a chapter 7 debtor complies with 11 U.S.C.
 521(2)(A) and (B), and therefore is entitled to retain the
property in question, simply by offering to reaffirm under the old
contractual terms, attempting in good faith to negotiate a
reaffirmation agreement with the creditor, and taking all steps
otherwise necessary to reaffirm a debt under 524. See In re
French, 185 B.R. 910, 914 (Bkrtcy. M.D. Fla. 1995); but cf., e.g.,
In re Turner, 156 F.3d 713, 718-21 (7th Cir. 1998) (chapter 7
debtors' unilateral statements of reaffirmation, filed without
notice to or the consent of creditors, were not valid reaffirmation
agreements under 521(2)(A)). We need not and do not decide
whether In re French was correctly decided; we only observe that
the regime unambiguously prescribed by 521(2)(A) and (B) does not
so clearly undermine a chapter 7 debtor's other Code-conferred
rights as to be unenforceable. 
 We conclude with two miscellaneous points responsive to
arguments made in the parties' briefs. First, we are distinctly
unimpressed with the tentative and unelaborated suggestion of
amicus that 11 U.S.C. 521(2)(A)'s reference to exemption as a
retention option, along with its concomitant failure to mention 
522(f)'s lien avoidance procedure as yet another retention option,
is tantamount to a textual endorsement of the retain-and-keep-
current option. There is no suggestion in the Code that a debtor
can exempt property by making payments under a pre-petition loan
agreement, and lien avoidance is just that lien avoidance. It is
not, in and of itself, a retention option. Second, because we
resolve this case on the plain language of the statute, we have no
need to plumb the sparse legislative history or to resolve the
parties' fundamental disagreement about whether enforcement of 
521(2)(A) and (B) would further, or undermine, the general policies
of the Bankruptcy Code. We do observe, however, that nothing in
the legislative history militates against the result we reach
today. Nor does our ruling run counter to policy judgments plainly
underlying the Code.
 IV.
 For the reasons stated, we believe that 11 U.S.C.
 521(2) unambiguously requires chapter 7 debtors wishing to retain
property of the estate that secures a consumer debt to elect one of
the retention options specified in 11 U.S.C. 521(2)(A), and then
to perform the elected option in accordance with 11 U.S.C.
 521(2)(B). We therefore reverse and remand to the BAP for further
proceedings consistent with this opinion.
 Reversed and remanded. No costs.